**Larry Cornell JOHNSON, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 82S01–9512–CR–1358.

Supreme Court of Indiana.

Dec. 18, 1995.

Verdelski V. Miller, Evansville, for Appellant.

Pamela Carter, Attorney General of Indiana, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for Appellee.

### ON PETITION TO TRANSFER

DeBRULER, Justice.

This case comes to this Court on petition to transfer. Ind.Appellate Rule 11(B)(2). Appellant was convicted of dealing in marijuana, a Class D Felony, and being an habitual offender. Ind.Code Ann. 35–48–4–10 (West Supp.1995); Ind.Code Ann. 35–50–2–8 (West Supp.1995). The Court of Appeals affirmed his conviction. *Johnson v. State* (1993), Ind.App., 617 N.E.2d 559. This Court grants transfer to address a single issue, whether the trial court erred in admitting the evidence found during a warrantless search of appellant and his car.

On October 11, 1991, a confidential informant told police that "Dukie" Johnson would be transporting narcotics in his car, a brown Jaguar, that evening in a particular area of town. Officer Zirkelbach had already confirmed that "Dukie" Johnson was appellant. The informant told the officer that if they did not find the narcotics in appellant's car, they should look down his pants. The officer who received the information knew Johnson personally, since early in his career as a police officer he had arrested appellant for a narcotics violation. The officer had been receiving reports regularly from a sheriff's deputy, who had been gathering information in his off-duty capacity as a security officer for the Ramada Inn, that a person who police had identified as appellant had been coming into a nearby gas station to have work done on his car. The individual had displayed large amounts of cash, had indicated that he would be taking long trips, and had expressed concern about his car's road-worthiness.

Based upon the specific information received from the informant on October 11, 1991, the officer issued a "BOL," i.e., a "Be on the Lookout," for appellant. Police stopped appellant in the area identified by the informant. Appellant had not committed any traffic infractions or violations in the presence of the officers who stopped him.

Appellant immediately left his vehicle and approached the police officers. A crowd began to gather. The officers first asked appellant for identification and then told him that they had probable cause to believe he was transporting narcotics. Appellant asked if they were going to look down his pants. The officers said that they were but did not have to do it there, handcuffed appellant, placed him in the police car, and transported him to a safer area approximately three blocks away where they conducted a "pat-down" search of his person and required appellant to open his pants. The officers found a small amount of marijuana in the waistband of appellant's trousers.

Meanwhile, officers at the car had removed appellant's passenger, had arrested him,[1] and

---

1. The record does not reveal on what charge    appellant's passenger was arrested.

searched appellant's car. They recovered more than thirty grams of marijuana from the glove compartment, substantially more than they had found when they searched appellant. Appellant moved to suppress the evidence found during the search, but the trial court determined that there had been probable cause and, accordingly, denied the motion.

### Discussion and Decision

Appellant claims that the trial court erred in denying his motion to suppress the marijuana found when police officers performed a warrantless search of appellant and his car. The State responds that the tip from a confidential informant is sufficient basis for performing an investigatory stop of an automobile.

Recently, this Court has been actively developing its search and seizure jurisprudence. *See Brown v. State* (1995), Ind., 653 N.E.2d 77; *Moran v. State* (1994), Ind., 644 N.E.2d 536, *reh'g denied*. Much of this work has been concerned with clarifying Indiana's own protections under Article One, Section Eleven of the State constitution. This case, however, presents a claim only under the Fourth Amendment to the United States Constitution, which says, "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV.

■■■ Prior to considering the search of appellant and his car, this Court must consider the initial stop of the Jaguar. The stopping of an automobile by police is a seizure which must be permissible under the Fourth Amendment. *Brown,* 653 N.E.2d at 81. In order to justify this stop, the police must have had a reasonable suspicion that criminal activity was occurring, or was about to occur. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This standard was clarified in later cases. *See, e.g., Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

In *White,* police received an anonymous tip that White would be leaving a particular address at a specific time in a particular car which had a broken tail light. *Id.* at 327, 110 S.Ct. at 2414, 110 L.Ed.2d at 306–07. The tip also alleged that White would drive to a certain motel and have an ounce of cocaine in a brown attaché case. *Id.,* at 325–27, 110 S.Ct. at 2414, 110 L.Ed.2d at 307. The police went to the address and found a car that matched the informant's description, including the broken tail light. *Id.,* at 325–27, 110 S.Ct. at 2414, 110 L.Ed.2d at 307. Within the time frame predicted, the police saw White leave the building empty-handed, get into the car with the broken tail light, and drive the most direct route towards the predicted motel. *Id.* at 327, 110 S.Ct. at 2414, 110 L.Ed.2d at 307. Shortly before White would have reached the motel, the police stopped her and asked to search the car and then a locked, brown attaché case inside the car. *Id.,* at 325–27, 110 S.Ct. at 2414–15, 110 L.Ed.2d at 307. White consented to both requests. *Id.,* at 327–29, 110 S.Ct. at 2415, 110 L.Ed.2d at 307. The police found marijuana in the attaché case and, after arresting White, they discovered three milligrams of cocaine in her purse. *Id.,* at 327–29, 110 S.Ct. at 2415, 110 L.Ed.2d at 307.

White filed a motion to suppress which the trial court denied. She pleaded guilty to possession of marijuana and cocaine but reserved the right to appeal the denial of her suppression motion. The Court of Criminal Appeals of Alabama reversed her conviction, holding that the police had not had the reasonable suspicion necessary under *Terry* to justify an investigatory stop. The court also concluded that her motion to dismiss should have been granted and reversed her conviction. The Supreme Court of Alabama denied the State's petition for writ of certiorari. The State appealed.

The United States Supreme Court concluded that the stop was acceptable. The Court conceded that it was a "close case" and said:

What was important was the caller's ability to predict [White's] *future behavior,* because it demonstrated inside information— a special familiarity with [White's] affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's

motel.... When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop.

*Id.* at 332, 110 S.Ct. at 2417, 110 L.Ed.2d at 310 (emphasis in original). The tip gave officers the tools with which to verify its dependability. They did so and their actions were permissible.

■ The Evansville police had apparently received a tip from a confidential, but not anonymous, informant. The tip, however, provided no specifics whatsoever by which it could be confirmed. The confidential informant said nothing that was not easily knowable by many members of the general public. In addition, the record reveals no reason for regarding the informant as reliable. Officer Zirkelbach did not claim that a single conviction had ever resulted from one of this informant's "tips."

The police had also been working on a typical "profile" of a narcotics trafficker. Officer Zirkelbach claimed that appellant satisfied this profile in at least three respects: appellant was making long distance trips; he had been seen with large sums of cash; and he was a black male driving a fancy car. While avoiding any debate about whether a fifteen year old Jaguar is a fancy car or not, it seems safe to say that a fully developed drug trafficker profile, combined with the tip, might have been sufficient to justify an investigatory stop. *See United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (thorough drug courier profile supported by empirical documentation may provide sufficient articulable basis for an investigatory stop). As presented in the record it provides no support at all for the actions of the police. If *White* was a close case, it seems clear what the result here should be.

The State does not argue but it is important to discuss this case in light of *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). In *Adams,* a known informant told a police sergeant that the occupant of a car parked nearby possessed a gun and narcotics. The police officer approached the car, tapped on the window and asked the occupant to open the door. When the man inside the car rolled down the window, the officer reached inside and seized a handgun from the man's waistband. He then arrested the man and a subsequent searched discovered heroin. The Supreme Court approved of the search because of the ability of the officer on the scene to immediately evaluate the veracity of the informant and the accuracy of the tip.

While *Adams* supports the State's position to some extent, it is important to emphasize that the holding of that case was extremely fact sensitive. The police officer was alone at the scene and had to decide instantly whether to take action necessitated by public safety.[2] Reasonable suspicion is more easily attained at 2:15 a.m. in a high crime area. As the Supreme Court said:

> Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations—for example, when the victim of a crime seeks *immediate* police aid and gives a description of his assailant, or when a *credible* informant warns of a *specific* impending crime—the subtleties of the hearsay rule should not thwart an appropriate police response.

*Id.* at 147, 92 S.Ct. at 1924, 32 L.Ed.2d at 617–18 (emphasis added). In this case there was evidence of neither a request for immediate police aid nor a credible informant warning of a specific impending crime. Given our earlier discussion, the tip in this case was completely lacking in indicia of reliability and the record offers no evidence that the confidential informant was reliable; the tip was, therefore, inadequate to support an investigatory stop. Like *Adams* and *White,* this is a close case, but, as indicated above, falls on the other side of the line.

**2.** This Court also recognizes that the presence of a handgun presents an immediate threat that necessitates an instant response, if any.

When police perform a warrantless search, the burden is on the State to demonstrate that it falls into one of the exceptions to the warrant requirement. Even under a "clearly erroneous" standard of review,[3] the State has failed to meet its burden; that failure leads this court to conclude that the original stop was illegal, lacking not only probable cause but even reasonable suspicion, and, accordingly, all the evidence derived from the illegal stop, including that from the subsequent searches, must be suppressed.

### Conclusion

Accordingly, this Court grants transfer, vacates the opinion of the Court of Appeals, reverses the convictions, and remands to the trial court for the suppression of the results of the illegal searches and further consistent proceedings. App.R. 11(B)(3).

DICKSON and SELBY, JJ., concur.

SULLIVAN, J., dissents with separate opinion, in which SHEPARD, C.J., concurs.

SULLIVAN, Justice, dissenting.

When the police turned on their overhead lights and pulled Johnson over, it is clear that a seizure within the meaning of the Fourth Amendment took place. *United States v. Hensley,* 469 U.S. 221, 226, 105 S.Ct. 675, 678–79, 83 L.Ed.2d 604 (1985). But "[n]ot all seizures of the person must be justified by probable cause to arrest for a crime." *Florida v. Royer,* 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (plurality opinion). Justice White for the *Royer* plurality went on to say:

> Prior to *Terry v. Ohio,* . . . any restraint on the person amounting to a seizure for the purposes of the Fourth Amendment was invalid unless justified by probable cause. *Terry* created a limited exception to this general rule: certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person

has committed or is about to commit a crime. In that case, a stop and frisk for weapons were found unexceptional. *Adams v. Williams,* 407 U.S. 143 [92 S.Ct. 1921], 32 L.Ed.2d 612 (1972), applied the same approach in the context of an informant's report that an unnamed individual in a nearby vehicle was carrying narcotics and a gun. Although not expressly authorized in *Terry, United States v. Brignoni–Ponce,* 422 US 873 [95 S.Ct. 2574, 45 L.Ed.2d 607] (1975) was unequivocal in saying that a reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop.

*Id.* at 498, 103 S.Ct. at 1324.

The theory employed by the Court of Appeals in affirming the trial court's denial of Johnson's motion to suppress was that even if probable cause did not exist at the time the police stopped Johnson, there was reasonable suspicion under *Terry v. Ohio* to make the stop; then, during their encounter with Johnson, the officers corroborated aspects of the informant's tip and probable cause arose to search Johnson and his car.

I find the following facts of particular relevance: First, during the period leading up to the events at issue in this case, Officer Zirklebach, a twenty year employee of the Evansville Police Department and six year veteran of its narcotics division, had been receiving information periodically from Detective Tony Carden, a detective in the Vanderburgh County Sheriff's Department Narcotics Unit. While working off-duty, Detective Carden had seen Johnson with a brown Jaguar at a certain gas station and garage on several occasions. According to the detective, as described in the testimony of Officer Zirklebach, Johnson had told people at the gas station that he was making long trips and that he was worried about the condition of his car. He had also displayed large sums of money when paying for having his car serviced. Officer Zirklebach testified at a pre-trial suppression

---

**3.** *See United States v. Ornelas–Ledesma,* 16 F.3d 714 (7th Cir.1994), *cert. granted,* —— U.S. ——, 116 S.Ct. 417, 133 L.Ed.2d 334 (1995) (complete drug courier profile plus two mutually corroborating Narcotic and Dangerous Drug Information System (NADDIS) "tips" is close but establishes reasonable suspicion). The United States Supreme Court has granted certiorari in order to address the appellate standard of review in warrantless searches.

hearing that he and Detective Carden had concluded that Johnson and his activities fit those of a "profile" of a "narcotics trafficker" which Detective Carden had developed.

Second, early in the evening of Johnson's arrest, and independent of the information he had been receiving periodically from Detective Carden, Officer Zirklebach received a tip from a confidential informant that Johnson would be carrying cocaine in his brown Jaguar. The informant also said that if Johnson did not have cocaine in his car, the police should check his underwear or the waistband of his pants. Officer Zirklebach testified at the suppression hearing that this confidential informant was registered as such with the Evansville Police Department and that he had spoken with this informant dozens of times over five years. "[S]ome of those instances resulted in arrest and some didn't," Officer Zirklebach said.

Here two experienced investigators had concluded that Johnson met the profile of a drug courier and an independent tip from a registered drug informant confirmed that view. Conceding that these two sets of facts alone, and assuming that both of them together, did not provide the police with probable cause to make an arrest, I nevertheless think that United States Supreme Court precedents make clear that either alone likely, and both together clearly, provide the articulable facts necessary to establish reasonable suspicion justifying a *Terry*-stop.

In *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), the Supreme Court addressed the question of whether drug courier profile evidence was enough to establish reasonable suspicion for an investigatory stop. Defendant had appealed his drug conviction on grounds of an illegal stop. The Supreme Court recited that, at the time of the stop, the DEA agents knew that the defendant paid for two airplane tickets from a roll of $20 bills, that he was traveling under a name that did not match the name under which his telephone number was listed, that his destination was Miami, that he stayed in Miami for only 48 hours before returning to Honolulu, that he appeared nervous during his trip, and that he did not check any luggage. Chief Justice

Rehnquist concluded that, while "[a]ny one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel[,] . . . taken together they amount to reasonable suspicion." *Sokolow*, 490 U.S. at 9, 109 S.Ct. at 1586.

In *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the Supreme Court was faced with an unverified tip from a known informant who had provided information in the past. Conceding that the unverified tip may have been insufficient to support an arrest or search warrant, the Supreme Court nevertheless concluded that the information carried sufficient "indicia of reliability" to justify a *Terry*-stop. *Adams*, 407 U.S. at 147, 92 S.Ct. at 1923–24.

And in *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the Supreme Court sustained (in what it described as a "close case") an anonymous tip, corroborated by the defendant acting in conformity with the tip, as "exhibiting sufficient indicia of reliability to justify the investigatory stop." 496 U.S. at 332, 110 S.Ct. at 2417. The following guidance from *Alabama v. White* is, I think, helpful here:

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. . . . Reasonable suspicion . . . is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture," *United States v. Cortez*, 449 U.S. 411, 417 [101 S.Ct. 690, 695, 66 L.Ed.2d 621] (1981), that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.

*Alabama v. White,* 496 U.S. at 330, 110 S.Ct. at 2416.

I find the tip in the present case to be of at least moderate reliability—though not verified, it did come from a registered police informant who had provided the police with reliable information in the past. To the extent the tip alone was not a sufficient articulable fact to establish reasonable suspicion, surely it, in combination with Detective Carden's and Officer Zirklebach's analysis of Johnson's suspicious behavior, established the requisite quantum of suspicion to justify the stop. I therefore agree with the Court of Appeals that the police had a reasonable suspicion based on articulable facts to justify an investigatory stop of Johnson under *Terry v. Ohio.* I further agree with the Court of Appeals that Johnson's question, "Are you going to look in my pants?," substantially corroborated the informant's tip and gave rise to probable cause to search Johnson and his car.

I would affirm the trial court.