Michael PARKER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9508–CR–500.

Court of Appeals of Indiana.

March 22, 1996.

Transfer Denied May 29, 1996.

Patrick Murphy, Jennifer L. Cole, Indianapolis, for appellant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

KIRSCH, Judge.

In this interlocutory appeal, Michael Parker challenges the trial court's denial of his motion to suppress evidence and raises two issues which we restate as:

I.  Whether an investigatory stop based upon a tip from a known informant exceeded the guidelines set forth by the United States Supreme Court in *Terry v. Ohio*.[1]

II.  Whether the police officer's seizure of cocaine from Parker exceeded the bounds of such a stop.

We affirm.

## FACTS AND PROCEDURAL HISTORY [2]

On July 25, 1994, Sergeant Steven Swarm of the narcotics/vice unit of the Indianapolis

---

1.  392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968).

2.  We caution appellant's counsel to read and comply with the requirements of Ind.Appellate Rule 7.2(A)(3)(a) which provides: "Notations shall be made on the margin of *each page of the transcript* of the evidence *indicating the name of each witness, and whether the examination is*

Police Department received a tip from a known informant. The informant stated that Parker, a black male, was wearing shorts, a plaid shirt, and a cap, and was carrying cocaine in a plastic bag. The informant further stated that Parker would sell the cocaine at a liquor store at 2450 New York Street.

The informant had been on the police payroll for several years, had provided information that led to the arrest and conviction of other suspected drug dealers, and had worked with Officer Swarm on previous occasions. After receiving this tip, Officer Swarm summoned Officer Roderick Wallace, and they immediately headed toward the 2400 block of New York Street. While en route to the liquor store, the officers saw the informant in person, and the informant verified the information he gave minutes earlier on the phone.

As the officers approached the liquor store, they saw two men, one of whom matched Parker's description, crossing New York Street, heading away from the liquor store. The officers stopped Parker and his companion. Officer Swarm notified the two men that he was conducting a narcotics investigation. Parker denied he was Michael Parker. The officers conducted a patdown of Parker and his companion to determine if they were carrying weapons. During the patdown, Officer Wallace felt an object in Parker's shorts that he immediately determined was cocaine. Officer Wallace then reached into Parker's pocket and pulled out a clear plastic bag containing cocaine. The police arrested Parker and charged him with possession of a controlled substance.

Prior to trial, Parker filed a motion to suppress the cocaine found by Officer Wallace, which was denied. Parker then filed for interlocutory appeal. The trial court certi-

fied the matter, and we accepted jurisdiction pursuant to Ind.Appellate Rule 4(B)(6).

## DISCUSSION AND DECISION

### I. Investigatory Stop

■ Parker first asserts that the investigatory stop conducted by Officers Swarm and Wallace did not meet the requirements of *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968), because it was based solely on the tip of a confidential informant. We disagree.

In *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879, the United States Supreme Court established the rule that the police, without a warrant or probable cause, can briefly detain an individual for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion of criminal activity. In addition to the detainment, the officer can conduct a limited search of the individual's outer clothing for weapons if the officer reasonably believes the individual is armed and dangerous. *Id.* at 27, 88 S.Ct. at 1883.[3]

Since *Terry*, the Supreme Court has considered the issue of using an informant's tip as the basis for an investigatory stop. In *Adams v. Williams*, 407 U.S. 143, 149, 92 S.Ct. 1921, 1925, 32 L.Ed.2d 612 (1972), the Court upheld a stop based on information given to the police, in person, by an informant who had previously provided information. In that case, a police officer on patrol in a high-crime area of Bridgeport, Connecticut was approached by an informant known to him who and advised that someone in a nearby vehicle had narcotics and a firearm in his possession. *Adams*, 407 U.S. at 144–45, 92 S.Ct. at 1922–23. The officer then approached the car of the suspect and asked him to open the door. The suspect did not comply but rolled down his window. The officer then reached into the car and withdrew a loaded firearm from the suspect's

direct, cross, or redirect." (Emphases added). Here, out of the 105 pages in the transcript, *not a single page contained the required notation.* In future appeals, we hope that appellant's counsel will make more than a token attempt to comply with the rules adopted by our supreme court.

3. Although Parker does not make an independent state constitutional argument, we note Indiana has adopted the *Terry* rationale in determining the legality of investigatory stops under Article I, Sec. 11 of the Indiana Constitution. *See Taylor v. State*, 639 N.E.2d 1052, 1054 (Ind.Ct.App. 1994).

waistband.[4] The suspect was arrested for unlawful possession of the firearm. A search incident to the arrest turned up heroin on the suspect's person and other weapons in the car. *Id.*

The Court upheld the investigatory stop because "The informant was known to [the officer] personally and had provided him with information in the past.... The informant here came forward personally to give information that was immediately verifiable at the scene." *Id.* at 146, 92 S.Ct. at 1923. Therefore, while the tip may have been insufficient to justify an arrest or search warrant, "the information carried enough indicia of reliability to justify the officer's forcible stop...." *Id.* at 147, 92 S.Ct. at 1924.

In *Adams,* the Court stated that the case before them was "a stronger case than obtains in the case of an anonymous telephone tip." *Id.* at 146, 92 S.Ct. at 1923. Eighteen years later, in *Alabama v. White,* 496 U.S. 325, 327, 110 S.Ct. 2412, 2414, 110 L.Ed.2d 301 (1990), the Court held that an anonymous telephone tip, corroborated by independent police work, was sufficiently reliable to justify a *Terry* stop.

In *White,* a police officer received an anonymous telephone call in which the caller stated that a woman named Vanessa White would depart from 235–C of the Lynwood Terrace Apartments at a particular time, driving a brown Plymouth station wagon with a broken right taillight. The caller also stated that White was in possession of cocaine in a brown case and was on her way to Dobey's Motel. Acting on this information, the officer proceeded to the Lynwood Apartments where they saw a brown Plymouth station wagon with a broken right taillight parked in front of building number 235. The police saw White leave building 235 and drive away in the Plymouth on the most direct route to Dobey's Motel. After White reached Mobile Highway, the road on which Dobey's is locat-ed, the police stopped her vehicle just short of the motel. The officer requested and received White's consent to search for cocaine. Their search turned up a locked brown case in the car. Upon request, White gave the officers the combination. They opened the case, found marijuana, and arrested White. While being booked at the station, the police found cocaine in White's purse. *White,* 496 U.S. at 327, 110 S.Ct. at 2414.

Adjudicating the propriety of the *Terry* stop, the Court stated, "Although it is a close case, we conclude that under the totality of the circumstances the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of [White's] car." *Id.* at 332, 110 S.Ct. at 2417. In reaching this conclusion, the Court focused on what was legally sufficient to establish reasonable suspicion. First, the Court noted that reasonable suspicion is a less demanding standard than probable cause both in the quantity and reliability of information necessary to make such a determination. *Id.* at 330, 110 S.Ct. at 2416.[5] Second, it stated that when deciding whether there is reasonable suspicion both the quantity and reliability of the information should be considered within the "totality of the circumstances—the whole picture." *Id.* (quoting *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).

In *White,* not every detail from the informant was verified prior to the police's investigatory stop: the woman's name, the exact apartment she left, and her destination. *Id.* at 331, 110 S.Ct. at 2416. The Court noted, however, that significant parts of the tip had been corroborated by police observation: the building she left, the approximate time of her departure, the vehicle she drove, and the fact that she took the most direct route to Dobey's Motel. *Id.* Critical to the Court's inquiry was the informant's ability to give details not only of easily attainable facts, but

4. From his vantage point outside the car, the officer could not see the weapon on the suspect's waistband, but found it where the informant told him it would be. *Adams,* 407 U.S. at 146, 92 S.Ct. at 1923.

5. The Court in *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989),

defined probable cause as " 'a fair probability that contraband or evidence of a crime will be found,' ... [as a result] the level of suspicion required for a *Terry* stop is obviously less demanding than for probable cause.") (citation omitted).

the ability to predict future behavior. *Id.* at 332, 110 S.Ct. at 2417. The Court found it highly unlikely that someone who was not privy to White's itinerary would be able to predict her approximate time of departure and that she would take the most direct route to Dobey's Motel. *Id.* Therefore, the Court relied on the proposition that "because an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity." *Id.* (citing *Illinois v. Gates,* 462 U.S. 213, 244, 103 S.Ct. 2317, 2335, 76 L.Ed.2d 527 (1983)).

Applying the principles of *Adams* and *White* to the present case, we hold that the informant's tip provided sufficient facts upon which the police could articulate a reasonable suspicion that Parker was engaged in criminal activity. Here, the informant's tip provided sufficient detail of easily attainable facts, and a reliable prediction of future behavior. The informant described Parker as a black male, wearing shorts, a plaid shirt with a blue, white, and red pattern, and a cap. In addition, the informant stated that Parker was carrying a clear plastic bag containing a white substance that he believed was cocaine. Finally, the informant predicted that Parker would sell the cocaine at a liquor store on the 2400 block of New York Street.

When the officers arrived at the liquor store, they were able to verify Parker's physical description, what he was wearing, and that he was where the informant predicted he would be. Quantitatively and qualitatively, the police in *Adams* and *White* had nothing more to rely on than the officers in the present case. *Adams* presented the case of an in-person tip given by a reliable and known informant. *Adams,* 407 U.S. at 144–45, 92 S.Ct. at 1922–23. However, the only verifiable fact that the officer had before him was a man sitting in a car in a high-crime area. *Id.* *White* presented the case of an anonymous phone caller who provided specific details with respect to White's departure, destination, and the vehicle she would be driving. *White,* 496 U.S. at 327, 110 S.Ct. at 2414. The caller in *White,* however, was an anonymous individual with no previously es-

tablished record of reliability or convictions resulting from tips.

Here, the officers relied on the tip of a known informant who provided the information over the phone and in person, gave specific verifiable details, accurately predicted Parker's future actions, and had provided information in the past that led to other narcotics convictions. Thus, in light of *Adams* and *White,* we hold that the tip provided sufficient indicia of reliability to justify the police's investigatory stop of Parker.

Our supreme court has recently addressed the issue of whether a tip from a confidential informant is a sufficient basis for the police to perform a *Terry* stop of an automobile. In *Johnson v. State,* 659 N.E.2d 116 (Ind. 1995), a confidential informant told police that "Dukie" Johnson would be transporting narcotics in a brown Jaguar, that evening, in a particular area of town. The informant told the police that if they did not find the narcotics in Johnson's car, it would be in his pants. The police stopped Johnson's vehicle in the area of town identified by the informant. A crowd began to gather as police informed Johnson that they believed he was transporting narcotics. Johnson asked if they were going to look down his pants. The police replied affirmatively but decided to move him to a different location, away from the crowd. They handcuffed Johnson, moved him several blocks away, and conducted a patdown search where they required him to open his pants. The police found a small amount of marijuana in Johnson's pants. *Id.,* at 117–18.

Our supreme court held that the informant's tip lacked the indicia of reliability necessary to support a *Terry* stop. *Id.,* at 119. The court based its holding on the fact that the informant's tip contained facts that any member of the general public could provide, and because there was no evidence that a single conviction ever resulted from one of the informant's tips. *Id.,* at 118–19.

The indicia of reliability that the court found lacking in *Johnson,* are present in the case at bar. Here, the informant did provide information that could be known to the public at large; i.e., a physical description of Parker. In addition to Parker's physical de-

scription, however, the informant also predicted Parker's future behavior. The informant stated that Parker would sell cocaine at a particular location, the liquor store at the 2400 block of New York Street, rather than saying it would be a general area of town. When the police arrived, they corroborated the tip and saw Parker crossing New York Street heading away from the liquor store. This ability to predict future behavior is an important consideration which supports the reliability of an informant's tip. *See White,* 496 U.S. at 332, 110 S.Ct. at 2417. ("What was important was the caller's ability to predict [White's] *future behavior,* because it demonstrated inside information—a special familiarity with [White's] affairs."); *Johnson,* at 118 (citing *White* and noting that such ability to predict future behavior allows officers to verify the reliability of a tip). Thus, because the informant's reliability here more closely resembled that of the informant in *White,* we find the informant's tip to contain sufficient indicia of reliability to support a *Terry* stop.

Another factor in *Johnson* which our supreme court noted was lacking from the informant's tip was that no convictions had resulted from that informant's tips. Here, Officer Swarm indicated that he had worked with the informant who called about Parker, on approximately thirty cases over a period of six years. *Record* at 46–47. Officer Swarm further stated that the information provided by that informant had previously led to the arrest and conviction of other drug dealers. *Record* at 47. This established record of reliability, in conjunction with the informant's ability to predict Parker's future behavior provided the indicia of reliability necessary to support a *Terry* stop. Therefore, *Johnson* is distinguishable on its facts.

## II.   Search and Seizure/"Plain Feel" Doctrine

█ Parker further contends that even if the initial stop was legal, Officer Wallace's search and seizure of the cocaine went beyond the permissible scope of a *Terry* search. We disagree.

In *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the Court addressed the issue of whether police could lawfully seize contraband if detected by the officer's sense of touch during a patdown search. The facts in *Dickerson* were as follows: Two police officers were patrolling in a marked squad car. They drove by an apartment building known to one of the officers as a "crack house," based on his execution of numerous search warrants there. The officers saw Dickerson leave the building and begin walking toward their squad car. Upon spotting the officers, Dickerson turned the opposite direction and walked into an alley beside the apartment building. The officers decided to investigate further because they considered Dickerson's actions to be evasive, and also because he had just left a known crack house. *Dickerson,* 508 U.S. at 367–369, 113 S.Ct. at 2133.

The officers pursued Dickerson into the alley, detained him, and conducted a patdown search. The search revealed no weapons. The searching officer, however, felt a small lump in Dickerson's jacket. The officer probed and manipulated the object and then reached into Dickerson's pocket and found a small plastic bag containing cocaine. *Id.*

The Court held the seizure to be unconstitutional because it exceeded the bounds of a *Terry* search. In reaching its holding, however, the Court recognized the general principle that police officers may seize contraband other than weapons during a protective patdown search as long as their search stays within the bounds of *Terry*. *Dickerson,* 508 U.S. at 373–374, 113 S.Ct. at 2136. This warrantless seizure, otherwise known as the "plain feel" doctrine, is an extension of the plain-view doctrine. Under the latter principle, the police may seize an object without a warrant if they are lawfully in a position from which they may view it, if its incriminating nature is immediately apparent, and if they have lawful access to the object. *Id.* at 375–376, 113 S.Ct. at 2137 (citing *Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2307–08, 110 L.Ed.2d 112 (1990)).

The rationale underlying the plain-view exception is that there is no invasion of a legitimate expectation of privacy if police are lawfully present and seize contraband in open view. *Dickerson,* 508 U.S. at 375–376,

113 S.Ct. at 2137. Therefore, in extending the plain-view doctrine to include plain feel, the Court stated:

> "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context."

*Id.*

Applying this principle to the present case, we hold that the seizure of cocaine from Parker did not exceed the bounds established by *Terry*. Here, Officer Wallace had reasonable suspicion to stop Parker. *See* Issue I, *supra*. Based on the informant's tip, he believed that narcotics would be present. Moreover, based on his experience, Officer Wallace knew that he was in an area known for frequent drug activity, and that firearms were frequently present in drug transactions. Consequently, he conducted a patdown search for weapons on Parker. When Officer Wallace reached the left front pocket of Parker's shorts, he noticed a hard object. Based on his experience and on the informant's tip, Officer Wallace determined that the object was cocaine. Upon removing the object, he found a clear plastic bag with powder cocaine.

Just as in *Dickerson*, the dispositive fact here is that Officer Wallace touched the object and immediately determined its incriminating character. Unlike the police officer in *Dickerson*, however, Officer Wallace did not continue to investigate or manipulate the object after concluding that it was not a weapon. *See Dickerson*, 508 U.S. at 377–379, 113 S.Ct. at 2138–39. Officer Wallace conducted a patdown for weapons and, through his tactile sense, found contraband that he instantly ascertained was cocaine. Thus, the patdown search did not exceed the permissible bounds of *Terry* or *Dickerson*.

Parker cites our recent decision *In the Matter of C.D.T. v. State*, 653 N.E.2d 1041, 1047 (Ind.Ct.App.1995), for the proposition that once the police determine a suspect is not armed, no further search is permissible under *Terry*. Our holding today does not contravene the holding in *C.D.T.* In *C.D.T.*, we determined that by the time the officer came across the contraband, he had already concluded that the suspect did not have weapons. *Id.* at 1047. Therefore, by continuing to search after finding no weapons, the officer in *C.D.T.* exceeded the scope of a *Terry* search. In the present case, however, when Officer Wallace reached the object in Parker's front pants pocket, he was still in the process of conducting a patdown search and had not yet concluded that Parker did not have a weapon. Unlike the officer in *C.D.T.*, he did not conduct a patdown, realize Parker had no weapons and then continue searching Parker. Thus, *C.D.T.* is distinguishable on its facts.

Instead, we choose to follow the principles enunciated in *Dickerson* and a case which presents more factual similarities to our own, *Bratcher v. State*, 661 N.E.2d 828 (Ind.Ct. App.1996). In *Bratcher*, a police officer was investigating a domestic disturbance call. Prior to reaching his destination, the officer was notified by the police dispatcher that someone involved in the dispute had left in a gray and black Ford Thunderbird chasing another vehicle. Shortly thereafter, the officer observed the Thunderbird chasing another vehicle. He stopped both vehicles. Bratcher exited the Thunderbird and began arguing with a woman in the other vehicle. The officer noticed a strong odor of alcohol on Bratcher's breath and that Bratcher had watery, bloodshot eyes. The officer then conducted a patdown search of Bratcher, looking for weapons. During the patdown, Officer Beroshok felt a soft item in Bratcher's pocket. He immediately thought it was a bag containing marijuana, reached into Bratcher's pocket, and retrieved a plastic bag containing marijuana. *Id.*, at 830.

We upheld the seizure of the marijuana as being within the scope of *Terry*. *Id.*, at 832. As in the present case, we found the critical distinction between the facts presented in *Bratcher* and those in *Dickerson* and *C.D.T.*, was that the officer "determined contemporaneously with his patdown search for weapons that the item in Bratcher's pocket was mari-

juana, rather than during a further search after he concluded Bratcher did not possess a weapon." *Bratcher*, at 832. Thus, because the incriminating character of the plastic bag was immediately apparent to the officer, we found *C.D.T.* to be inapposite, and the seizure valid under *Terry* and the plain feel exception set forth in *Dickerson.*

Based on the facts presented before us, we find the reasoning of *Bratcher* to be controlling and hold that Officer Wallace's search of Parker is permissible under *Terry* and seizure of the cocaine permissible under *Dickerson*. *See also Drake v. State*, 655 N.E.2d 574, 576–77 (Ind.Ct.App.1995) (distinguished *C.D.T.* and held contraband seized during a *Terry* search was properly admitted into evidence because the officer was in the midst of searching for weapons and had not yet determined that the suspect was unarmed).

In his dissent, Judge Sullivan states that the officer's discovery of cocaine was not an inadvertent result of a weapons patdown and that the officer could not have immediately known the object in Parker's pants was powder cocaine. We, too, are concerned about the police officer's true purpose in conducting the search and question how the officer could determine that the object was cocaine solely from its feel. The trial court, however, held a hearing on Parker's motion to suppress. It heard the officer's testimony; it believed that testimony, and we are constrained to accept that determination. *See Graves v. State*, 496 N.E.2d 383, 389 (Ind.1986) (reviewing court accepts trial court's determination of witness credibility when reviewing denial of a motion to suppress).

Affirmed.

ROBERTSON, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

The crucial factor leading to the majority's affirmance is its statement that during the patdown for weapons, "Officer Wallace felt an object in Parker's shorts that he immediately *determined* was cocaine." Op. at 995 (emphasis supplied). In my view, the officer could not have determined it to be cocaine until he removed the plastic bag from Parker's pocket and saw that it contained cocaine powder, as opposed to crack cocaine which was the case in *Minnesota v. Dickerson* (1993) 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334. The "plain feel" test would seem more difficult to be met here, than in *Dickerson*. In *Dickerson*, the officer stated that the small lump felt in Dickerson's pocket "slid and it felt to be a lump of crack cocaine in cellophane". 508 U.S. at 369, 113 S.Ct. at 2133. Yet the United States Supreme Court agreed with the Minnesota Supreme Court and held that the discovery of the cocaine exceeded the permissible bounds of the patdown search. Our case involved powder cocaine and was therefore even less susceptible to immediate identification by feel. In my estimation the result in *Dickerson* dictates reversal in this case.

There is yet another aspect to the denial of the motion to suppress which leads me to dissent. The "plain feel" doctrine adopted in this state from *Dickerson* is admittedly an extension of the "plain view" doctrine. We have previously noted that in order to be admissible under a "plain view" theory, the discovery of the contraband must be inadvertent. *See Wood v. State* (1992) Ind.App., 592 N.E.2d 740, 742. Clearly, Officer Wallace's discovery of cocaine was not inadvertent, during a weapons patdown. When Parker and his companion were stopped by the police, Officer Swarm immediately stated that he was "conducting a narcotics investigation." Op. at 995. The informant had advised police that Parker would be carrying cocaine and would be selling the cocaine at the liquor store. It was clear, therefore, that the purpose in making the patdown was to ascertain the presence of cocaine.

Even if the patdown was being conducted for the officers' safety as well as for purposes of the narcotics investigation, the fact remains that when Officer Wallace felt the object, later discovered to be cocaine in powder form, he immediately knew it was not a weapon. Nevertheless, his search for cocaine persisted and he removed the packet from Parker's pocket.

I believe the facts and the holdings of *Dickerson, supra,* and *C.D.T. v. State* (1995) Ind.App., 653 N.E.2d 1041 are more closely analogous to the case before us and dictate reversal of the trial court's ruling upon the motion to suppress. In this respect I believe that *Bratcher v. State* (1996) Ind.App., 661 N.E.2d 828, relied upon by the majority, was wrongly decided and I would decline to follow it.