Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
May 28 2014, 9:41 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KRISTIN A. MULHOLLAND**
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| NAPOLEON WILSON, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )  No.  45A04-1308-CR-434 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Ross Boswell, Judge
Cause No. 45G03-1203-FC-32

**May 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Napoleon Wilson ("Wilson") was charged with Burglary, as a Class C felony,[1] and was alleged to be a habitual offender,[2] after the vehicle in which he was a passenger was stopped by a police officer acting upon information from two anonymous tips. He moved to suppress the results of the stop, including physical evidence and the contents of a Mirandized statement he gave to police several hours after the arrest. The trial court denied the motion to suppress.

Wilson now brings an interlocutory appeal of that order. We affirm.

**Issue**

Wilson raises a single issue for our review, which we restate as whether the trial court erred when it denied his motion to suppress evidence because police lacked the reasonable suspicion necessary to conduct an investigative stop of the car in which Wilson was a passenger.

**Facts and Procedural History**

We take our statement of facts from testimony and evidence presented at the hearing on Wilson's motion to suppress evidence.

On January 23, 2012, several police officers, including Officer Justin Clark ("Officer Clark") and Corporal Daniel Quasney ("Corporal Quasney") were dispatched to the 4500 block of Connecticut Street in Gary in response to a call to police that a white, four-door

---

[1] Ind. Code § 35-43-2-1.

[2] I.C. § 35-50-2-8.

2

Pontiac Grand Am was parked in an alley next to 4569 Connecticut Street. The report, which came from an anonymous informant, indicated that a male had been "scrapping" metal from inside the residence. (Tr. at 6, 23; Exhibit.)

Officer Clark was first to arrive at the location, and upon his arrival was flagged down by an unidentified individual who indicated that a black male had just left the scene in a white Pontiac Grand Am with a black vehicle bra. Based on this information, Officer Clark continued on to 47th Avenue, where he saw a vehicle that matched the description provided by the second anonymous tipster.

Officer Clark initiated an investigatory stop of the car. As he approached the vehicle, Officer Clark saw in plain view through the car's window several rusted metal pipes in the backseat. After a brief conversation the car's driver, Rozena Smith ("Smith"), consented to Officer Clark's request to search the car. Smith had told Officer Clark that the passenger in the car, later identified as Wilson, had asked her to drive him to a specific location and that the pipes in the car were Wilson's. Wilson was arrested at the scene.

Officer Clark requested consent to search the car, which Smith gave. Smith also agreed to show him where Wilson had asked to go. Smith directed Officer Clark to the alley at 4569 Connecticut Street.

Officer Clark investigated and determined that no one had entered 4569 Connecticut Street. However, the door to 4573 Connecticut Street, which was immediately adjacent to 4569, was open. Footprints in the snow led to the door of the house at 4573. When Officer Clark entered the house, he observed that metal pipes were missing.

At around 9:30 p.m. on January 23, 2012, Detective Freddie Cook ("Detective Cook") spoke with Wilson while Wilson was still being detained after his arrest. After Detective Cook issued <u>Miranda</u> warnings to Wilson, Wilson admitted that he had taken pipes from the general location, but did not admit to entering the residence at 4573 Connecticut Street.

On March 16, 2012, the State charged Wilson with Burglary. On June 17, 2013, the charging information was amended to add an allegation that Wilson was a habitual offender.

On June 13, 2013, Wilson filed a motion to suppress evidence. A hearing on the motion was conducted on June 18, 2013, after which the parties provided supplemental briefing to the trial court.

On July 11, 2013, the trial court denied Wilson's motion to suppress evidence. Wilson moved the trial court to certify the order for interlocutory appeal; the trial court did so, and we accepted jurisdiction over the case.

This appeal ensued.

**Discussion and Decision**

Wilson brings this interlocutory appeal from the denial of his motion to suppress evidence, contending that Officer Clark's investigative stop of the vehicle in which Wilson was traveling as a passenger violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and Article 1, section 11 of the Indiana Constitution.

The Fourth Amendment states, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures … shall not be violated." U.S. Const. amend. IV. The Indiana Constitution provides

similar protections. Ind. Const. art. 1 § 11. The protections afforded by both documents "extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."[3] United States v. Arvizu, 534 U.S. 266, 273 (2002) (citing Terry v. Ohio, 392 U.S. 1, 9 (1968), and United States v. Cortez, 449 U.S. 411, 417 (1981)). Because the balance between public interest and an individual's right to personal security tilts in favor of a lower standard than probable cause, reasonable suspicion that criminal activity "may be afoot" is sufficient to justify such investigatory stops. Id. Reasonable suspicion requires that there be "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." Cortez, 449 U.S. at 417. While there is no set of hard-and-fast rules to determine what constitutes reasonable suspicion, Arvizu, 534 U.S. at 274, a mere "hunch" is insufficient. Terry, 392 U.S. at 27.

Thus, when reviewing investigatory stops for reasonable suspicion, we "look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." Arvizu, 534 U.S. at 273 (citing Cortez, 449 U.S. at 417-418). The State must bear the burden of proving that reasonable suspicion existed, and we review a trial court's determination of reasonable suspicion de novo, giving due weight to the inferences drawn from the facts presented to the trial court. Bannister v. State, 904 N.E.2d 1254, 1255-56 (Ind. 2009). When reviewing motions to suppress evidence, "[w]e do not reweigh the evidence, and we consider

---

[3] Our supreme court has made no substantive distinction between the rights afforded by the United States and Indiana Constitutions on the question of the validity of an investigative stop. See, e.g., State v. Renzulli, 958 N.E.2d 1143, 1146-47 (Ind. 2011) (following U.S. Supreme Court precedent in looking to the totality of the circumstances to determine whether reasonable suspicion exists).

5

conflicting evidence most favorable to the trial court's ruling, but we also consider the uncontested evidence favorable to the defendant." Shell v. State, 927 N.E.2d 413, 418 (Ind. Ct. App. 2010) (citations omitted).

Here, Wilson contends that the information police received from anonymous tipsters was insufficient to satisfy the requirement of reasonable suspicion necessary to perform an investigative stop of Smith's vehicle, in which Wilson was a passenger. "[T]he Supreme Court has held as a general matter that 'an anonymous tip alone is not likely to constitute the reasonable suspicion necessary for a valid Terry stop.'" Sellmer v. State, 842 N.E.2d 358, 361 (Ind. 2006) (citing, inter alia, Alabama v. White, 496 U.S. 325, 329-30 (1990)). Rather, there must be some corroboration or other indicia of reliability of sufficient "quantity and quality" as to give rise to a conclusion that, as a result of an anonymous tip, police had reasonable suspicion under the totality of the circumstances that criminal activity was afoot. White, 496 U.S. at 330. "Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." Id. And "there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." Florida v. J.L., 529 U.S. 266, 270 (2000).

As our supreme court has observed:

> precedent dictates that for an anonymous tip to constitute the reasonable suspicion necessary for a valid investigatory stop, at least two conditions must be met. First, "significant aspects of the tip [must be] corroborated by the police." *Id.* at 1271. Such corroboration requires that an anonymous tip give the police something more than details regarding facts easily obtainable by the general public to verify its credibility. *See Johnson v. State,* 659 N.E.2d 116,

6

119 (Ind.1995) (holding that an anonymous tip that provided only information easily obtainable by members of the general public was insufficiently reliable to constitute reasonable suspicion to conduct an investigatory stop). Second, an anonymous tip, if it is to be considered reliable enough to constitute reasonable suspicion to conduct an investigatory stop, must also demonstrate an intimate familiarity with the suspect's affairs and be able to predict future behavior. *See Id.* at 118.

Sellmer v. State, 842 N.E.2d 358, 361 (Ind. 2006).

Here, police responded to an anonymous call indicating that a black male was removing metal from inside a residence at 4569 Connecticut Street, and a white Pontiac Grand Am was associated with his activities. When Officer Clark arrived at the scene, an anonymous individual flagged him down, provided corroborating information concerning the description of the individual removing metal and the description of the car, and added information concerning the car's appearance, namely, the presence of a black vehicle bra on the front of the car.[4] Soon afterward, Officer Clark observed a vehicle matching this description traveling westbound on 47th Avenue, and initiated the traffic stop.

Given the face-to-face corroboration of information from the anonymous tip that was provided to Gary police by telephone, we conclude that, under the totality of the circumstances, police had sufficient information to give rise to the reasonable suspicion necessary to perform an investigative stop of Smith's vehicle. Accordingly, we affirm the trial court's denial of Wilson's motion to suppress evidence.

Affirmed.

---

[4] Wilson contends that it is not unreasonable to think that the initial phone call to Gary police and the person who flagged down Officer Clark's vehicle on Connecticut Street are one and the same. This is pure speculation.

7

KIRSCH, J., and MAY, J., concur.