**Christopher MOULTRY, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0304–CR–320.**

Court of Appeals of Indiana.

May 17, 2004.

Timothy J. O'Connor, O'Connor & Auersch, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Christopher Moultry was charged with Count I, dealing in cocaine, a Class A felony;[1] Count II, possession of cocaine, a Class C felony;[2] Count III, possession of cocaine and a firearm, a Class C felony;[3] and Count IV, carrying a handgun without a license, a Class A misdemeanor.[4] He appeals the denial of his motion to suppress evidence of cocaine and handguns found in his car. Moultry asserts the evidence supporting the charges was obtained pursuant to an investigatory stop conducted without the reasonable suspicion required by the Fourth Amendment.

We affirm.

---

1. Ind.Code § 35–48–4–1.

2. Ind.Code § 35–48–4–6.

3. Ind.Code § 35–48–4–6.

4. Ind.Code § 35–47–2–1.

## FACTS AND PROCEDURAL HISTORY

On July 9, 2002, Officer Shaughnessy of the Indianapolis Police Department ("IPD") arrested Kendre Harris on outstanding warrants. While being interrogated, Harris told Officer Shaughnessy he had worked with men who were selling drugs around 9th and Delaware Streets in Indianapolis.

Harris told Shaughnessy that one of the men named "Chris" was dealing drugs out of his white Cadillac, which had silver rims. Harris also informed Shaughnessy the men used two-way radios and employed "runners" (Tr. at 54) to go to an apartment to obtain drugs and deliver them.

Two days after Harris' arrest, Shaughnessy saw a white Cadillac with silver rims fitting the description Harris had given him with the license plate number "97R1934." Shaughnessy ran the license plate number and found the car was registered to Moultry. The officer also discovered Moultry had drug-related prior offenses.

The following day, July 12, 2002, Officer Brian Swingle [5] of the IPD received a dispatch relaying an anonymous report of drug dealing by the occupants of a white Cadillac with silver rims with license plate number "97R1934." According to the caller, the car was traveling up and down 9th Street near Delaware Street about every fifteen minutes. Officer Swingle found the white Cadillac, pulled behind it, and radioed to dispatch he had found the car.

Officer Shaughnessy heard Officer Swingle's radio call and told Officer Swingle he had enough information to stop the occupants of the Cadillac. Officer Swingle activated his emergency lights and pulled the vehicle over at a nearby gas station. In the Cadillac, Officer Swingle saw three men, one of whom was Moultry, the driver. Officer Swingle asked Moultry to exit the vehicle. After Officer Shaughnessy and other officers arrived, the other two men were removed from the vehicle.

Moultry allowed the officers to search the ashtray of his car where officers noticed marijuana seeds and residue. The officers also noticed in plain view on the driver's seat a piece of plastic associated with narcotics. The officers searched Moultry and found $800 and crack cocaine in his front pocket. The officers continued to search the vehicle and discovered cocaine and handguns.

The State charged Moultry with three felonies and one misdemeanor. On January 8, 2003, Moultry filed a motion to suppress any evidence discovered after the initial traffic stop. The trial court denied his motion. Moultry subsequently requested that denial of the motion be certified for interlocutory appeal and the trial court granted that request. We accepted jurisdiction over this interlocutory appeal.

## DISCUSSION AND DECISION

▬ At issue in this case is an investigatory stop. The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures" by the Government, and its safeguards extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). However, a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if,

---

5. The State's brief refers to Officer Swingle as Ryan, rather than Brian. However, Officer Swingle testified his first name is "Brian with an I." (Tr. at 4.) Accordingly we refer to the officer as "Brian."

based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■■■ Reasonable suspicion is a "somewhat abstract" concept, not readily reduced to "a neat set of legal rules." *Arvizu*, 534 U.S. at 274, 122 S.Ct. 744. When making a reasonable suspicion determination, reviewing courts examine the "totality of the circumstances" of the case to see whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. *Id.* at 273, 122 S.Ct. 744. The reasonable suspicion requirement is met where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe criminal activity has occurred or is about to occur. *Francis v. State*, 764 N.E.2d 641, 644 (Ind.Ct.App.2002). We review the trial court's ultimate determination regarding reasonable suspicion *de novo*. *Arvizu*, 534 U.S. at 275, 122 S.Ct. 744; *Williams v. State*, 745 N.E.2d 241, 244 (Ind.Ct.App. 2001).

■■■ Moultry asserts the officers who stopped his vehicle "lacked reasonable suspicion for their actions, and the evidence gained as a result of the unlawful seizure should, therefore have been suppressed." (Br. of Appellant at 5.) Further, Moultry contends the three sources of information relied on by the police to justify the stop of his car taken individually or collectively could not have provided the officers with reasonable suspicion to stop his vehicle. We disagree.

The police relied on 1) information provided to Officer Shaughnessy by Harris on July 9, 2002; 2) information obtained by Officer Shaughnessy when he ran Moultry's license plate and criminal history on July 11, 2002; and 3) the anonymous 911 call that was relayed by police dispatch to the officers in the field on July 12, 2002.

We have previously held that "an anonymous tip is not sufficient to permit police to detain a citizen and subject him or her to an investigatory stop absent independent indicia of reliability or officer-observed confirmation of the anonymous informant's prediction of the suspect's future behavior." *Washington v. State*, 740 N.E.2d 1241, 1246 (Ind.Ct.App.2000), *trans. denied* 753 N.E.2d 7 (Ind.2001).

In *Washington*, an anonymous informant reported a possible drunk driver to the Lafayette State Police Post. The informant, whose identity and reliability were unknown, advised that the driver was in a black and white Cadillac with a particular license plate number traveling southbound on Interstate 65. An off-duty police officer received the call and stationed himself at the roadside. When the Cadillac passed, the officer followed the car for approximately one-half mile and verified the license number. Without observing any evidence of drunken or erratic driving, the officer stopped the Cadillac. We held that the officer did not have reasonable suspicion to stop the car.

Officer Shaughnessy first received specific information about Moultry from the informant Harris. Harris informed Shaughnessy he worked with some individuals selling drugs around 9th and Delaware Streets. Harris stated one of those individuals was named "Chris" and that he drove a white Cadillac with silver rims.

Using the information Harris provided, Officer Shaughnessy, who saw Moultry's vehicle two days after questioning Harris, ran the vehicle's plate number. The plate

was registered to Moultry. Shaughnessy ran a criminal check on Moultry and found he had drug-related prior offenses.

Subsequently, Officer Swingle received a radio dispatch relaying an anonymous report of drug dealing. The anonymous tip gave specific information about a white Cadillac with the license plate number registered to Moultry and stated the vehicle was on 9th Street and its occupants were dealing drugs. Officer Shaughnessy informed Swingle that based on the information he obtained the day before, along with the anonymous tip, he believed Swingle had sufficient evidence to stop Moultry's vehicle. An investigative stop may be based upon the collective information known to the law enforcement organization as a whole. *See Kindred v. State*, 524 N.E.2d 279, 292 (Ind.1988) (probable cause should be determined on the basis of the collective information known to the law enforcement organization as a whole and not solely to the personal knowledge of the arresting officer).

When significant aspects of the anonymous informant's prediction are verified, there is reason to believe not only that the anonymous informant was honest, but also that the anonymous informant's information is sufficiently credible to justify an investigatory stop. *Lampkins v. State*, 682 N.E.2d 1268, 1271 (Ind.1997) (*citing Alabama v. White*, 496 U.S. 325, 332, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). The anonymous tip received on July 12, 2002, in conjunction with the information police obtained from Harris and the vehicle registration and prior criminal record information on Moultry obtained by Officer Shaughnessy, provided reasonable suspicion to support the stop of Moultry's vehicle. Based on the totality of the circumstances of Moultry's stop, we find no

error in the trial court's denial of his motion to suppress evidence.

Affirmed.

BAKER, J., and NAJAM, J., concur.