STATE of Indiana, Appellant–Plaintiff,

v.

Amanda RENZULLI, Appellee–Defendant.

No. 32A04–1003–CR–194.

Court of Appeals of Indiana.

Oct. 5, 2010.

Rehearing Denied Dec. 10, 2010.

Gregory F. Zoeller, Attorney General of Indiana, Cynthia Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

David M. Seiter, Joshua Taylor, Garrison Law Firm, LLC, Indianapolis, IN, Attorneys for Appellee.

## OPINION[1]

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, State of Indiana, appeals the trial court's suppression of the evidence obtained after the stop of the vehicle that Appellee–Defendant, Amanda Renzulli (Renzulli), was driving.

We affirm.

### ISSUE

The State presents one issue, which we restate as: Whether the trial court's grant of Renzulli's motion to suppress is contrary to law.

### FACTS AND PROCEDURAL HISTORY

At approximately 1:00 a.m. on April 23, 2009, a caller phoned 911 and stated, "there is a drunk driver in front of me. He's all over the road and he's going to kill somebody." (Appellant's App. p. 17). The caller initially said that the vehicle was a blue Volkswagen Jetta but later identified the vehicle as a Volkswagen Passat, a similarly shaped and sized vehicle. The caller

---

1. Under the criteria set forth in Appellate      Rule 65, I vote not to publish this opinion.

did not get close enough to the vehicle to get a license plate number. The caller explained to the 911 dispatch officer that the vehicle had pulled into a gas station and gave the location of the gas station. When asked, the caller gave his name and phone number.

Police officers arrived at the gas station moments later. A blue Volkswagen was parked in a parking space and the officers observed it begin to back out of the space. One officer commanded the vehicle to stop and the driver complied after having moved only a few feet. The police officers began an investigation, determined that the driver of the vehicle at the time of the stop was Renzulli, and that she was intoxicated.

Later that same day, the State filed an Information charging Renzulli with operating a vehicle while intoxicated, as a Class A misdemeanor, Ind.Code § 9–30–5–2(b), and operating a vehicle while intoxicated, as a Class D felony, I.C. § 9–30–5–3. On September 3, 2009, Renzulli filed a motion to suppress the evidence obtained after the stop of her vehicle.

On October 7, 2009, the trial court conducted a suppression hearing. The State called Officer Brian S. Stewart of the Plainfield Police Department (Officer Stewart) as its sole witness. Officer Stewart testified that he was not the officer that ordered the vehicle driven by Renzulli to stop, but was present when that order was made. Officer Stewart did not witness the vehicle make any maneuvers, other than when it began to back out of the space just prior to being ordered to stop. He admitted that he did not have personal knowledge as to who had been driving the vehicle prior to pulling into the parking spot. Officer Stewart testified that he did not know whether other blue cars or Volkswagens were located in the parking lot of the gas station at the time Renzulli

was stopped. Further, Officer Stewart did not know who the 911 caller was and could not testify as to the credibility of the caller.

At the close of the hearing, the trial court took the motion to suppress under advisement. On October 16, 2009, the trial court granted the motion to suppress concluding that the officers responding to the 911 call did not "establish an independent and objective basis to create reasonable suspicion of criminal behavior necessary for an investigatory stop." (Appellant's App. p. 18).

The State now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

The State contends that the trial court's grant of the motion to suppress was contrary to law. Specifically, the State contends that the 911 call was a sufficient basis for reasonable suspicion to stop the vehicle that Renzulli was driving.

When we review a trial court's decision on a motion to suppress, we determine whether the record discloses "substantial evidence of probative value that supports the trial court's decision." *State v. Washington*, 898 N.E.2d 1200, 1203 (Ind.2008) (quoting *State v. Quirk*, 842 N.E.2d 334, 340 (Ind.2006)). We will not reweigh the evidence. *Id.* Because the State is appealing from a negative judgment, it must show that the trial court's ruling was contrary to law. *Id.*

"The Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution protect the privacy and possessory interests of individuals by prohibiting unreasonable searches and seizures." *Coleman v. State*, 847 N.E.2d 259, 262 (Ind.Ct.App.2006), *reh'g denied, trans. denied*. Generally, a lawful search requires a judicially issued

search warrant, but where a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Id.* A police officer may make a brief investigatory stop without a warrant or probable cause if, "based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted and the officer has a reasonable suspicion that criminal activity 'may be afoot.'" *Moultry v. State,* 808 N.E.2d 168, 170–71 (Ind.Ct.App.2004) (quoting *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "Reasonable suspicion is a 'somewhat abstract' concept, not readily reduced to 'a neat set of legal rules.'" *Ertel v. State,* 928 N.E.2d 261, 264 (Ind.Ct.App.2010), *trans. denied* (quoting *Moultry,* 808 N.E.2d at 171). Reasonable suspicion is determined on a case-by-case basis by looking at the totality of the circumstances, and is generally satisfied when the facts known to the officer at the moment of the stop, along with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to be that criminal activity has occurred or is about to occur. *Coleman,* 847 N.E.2d at 262.

The State argues that we should treat the 911 call as a tip from an identified informant or concerned citizen. In *Kellems v. State,* 842 N.E.2d 352, 353 (Ind. 2006), *reversed on reh'g on other grounds,* our supreme court held that a "tip from an identified informant or concerned citizen coupled with some corroborative police investigation is sufficient to create reasonable suspicion for an investigative stop." In that case, the Tell City Police Department received a telephone call from a woman who identified herself by name. *Id.* The woman reported seeing a man that she knew by name driving without a license or insurance, while intoxicated, and with children in his vehicle. *Id.* The woman gave a description of the vehicle, and his license plate number, along with information about where the vehicle was traveling. *Id.* A police officer responded to the call, caught up with the vehicle while it was traveling, and after confirming that the license plate number matched, stopped the vehicle. *Id.* at 354.

Our supreme court found that there was reasonable suspicion based largely upon the fact that the "tipster identified herself." *Id.* at 355. The reasoning behind our supreme court's holding was the "limited scope and purpose" of a *Terry* stop, and also because an "identified informant's 'reputation can be assessed and ... [they may] be held responsible if [their] allegations turn out to be fabricated....'" *Id.* (quoting *Florida v. J.L.,* 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000)). However, our supreme court did not hold that susceptibility to "prosecution for making a false report, standing alone, will in all cases constitute reasonable suspicion." *Id.* Rather, potential prosecution is a "circumstance bearing on the reasonableness of suspicion," which must be considered in the totality of the circumstances. *Id.* at 356.

■ Here, we agree with the State that the 911 caller who spotted the blue Volkswagen should be considered an identified informant or concerned citizen, as opposed to an anonymous tip, and, thus, the tip was a circumstance which bore in favor of reasonable suspicion. However, we conclude that the police failed to 'couple' the concerned citizen's tip with corroborative investigation. *See id.* at 353 ("tip from an identified informant or concerned citizen *coupled with some corroborative police investigation* is sufficient to create reasonable suspicion for an investigative stop") (emphasis added). In *Kellems,* our supreme court twice noted that the police officer confirmed that the license plate of

the vehicle driven by Kellems matched the number given by the concerned citizen tipster. *Id.* at 353 and 357. Here, however, the sole witness called by the State testified that he did not know whether another blue car, or another Volkswagen was parked in the gas station parking lot at the time Renzulli's vehicle was stopped. It may be possible that another officer checked to be sure that Renzulli's vehicle was the only vehicle at the gas station that matched the description given by the 911 caller, but the State did not introduce that evidence at the suppression hearing. As we have stated above, the State bears the burden of proving that an exception to the warrant requirement is present. *Coleman,* 847 N.E.2d at 262. In light of the lack of any evidence that the police officers corroborated that Renzulli's car was the vehicle which the 911 caller referred to, we cannot conclude that the trial court's grant of the motion to suppress was contrary to law.

### CONCLUSION

Based on the foregoing, we conclude that the trial court's grant of Renzulli's motion to suppress was not contrary to law.

Affirmed.

MATHIAS, J., concurs in result with separate opinion.

BRADFORD, J., dissents with separate opinion.

2. Neither party raises the issue of the timeliness of the State's appeal. Nevertheless, the timely filing of a notice of appeal is a jurisdictional prerequisite that can be raised *sua sponte* even if the parties do not question jurisdiction. *Jernigan v. State,* 894 N.E.2d 1044, 1046 (Ind.Ct.App.2008); *Bohlander v. Bohlander,* 875 N.E.2d 299, 301 (Ind.Ct.App. 2007), *trans. denied* (citing *Georgos v. Jackson,* 790 N.E.2d 448, 451 (Ind.2003)). Thus, subject matter jurisdiction cannot be waived, and courts at all levels are obligated to consider

MATHIAS, J., concurring in result.

I respectfully concur in result. I do so believing that the State's procedural decisions at the trial court level have forfeited its appeal.[2]

I begin by noting that the State's right to appeal in criminal cases is limited. Simply said, the State may appeal from criminal proceedings only when authorized by statute. *State v. Gradison,* 758 N.E.2d 1008, 1010 (Ind.Ct.App.2001) (citing *State v. Aynes,* 715 N.E.2d 945, 948 (Ind.Ct.App. 1999)); *see also State v. Hicks,* 453 N.E.2d 1014, 1016 (Ind.1983); *State v. Pease,* 531 N.E.2d 1207, 1208 (Ind.Ct.App.1988) (both noting that State cannot appeal in criminal cases unless specifically authorized to do so by statute). Important to our considerations here, when the State is authorized by statute to appeal in criminal cases, the statute is strictly construed because it contravenes common-law principles. *Pease,* 531 N.E.2d at 1208 (citing *State v. Holland,* 273 Ind. 284, 286, 403 N.E.2d 832, 833 (1980)).

The Indiana statute governing appeals by the State in criminal matters provides:

Appeals to the supreme court or to the court of appeals, if the court rules so provide,[3] may be taken by the state in the following cases:

(1) From an order granting a motion to dismiss an indictment or information.

the issue *sua sponte. Jernigan,* 894 N.E.2d at 1046.

3. "[T]he clause 'if the court rules so provide' is intended to differentiate between the respective jurisdictions of the Supreme Court and the Court of Appeals, and thereby act as a guide to counsel for the State as to which appellate court the appeal should properly be filed with. The clause is not ... intended to require the adoption of appellate court rules authorizing appeals by the State" *State v.*

(2) From an order or judgment for the defendant, upon his motion for discharge because of delay of his trial not caused by his act, or upon his plea of former jeopardy, presented and ruled upon prior to trial.

(3) *From an order **granting** a motion to correct errors.*

(4) Upon a question reserved by the state, if the defendant is acquitted.

(5) *From an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution.*

(6) From any interlocutory order if the trial court certifies and the court on appeal or a judge thereof finds on petition that:

(A) the appellant will suffer substantial expense, damage, or injury if the order is erroneous and the determination thereof is withheld until after judgment;

(B) the order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case; or

(C) the remedy by appeal after judgment is otherwise inadequate.

Ind.Code § 35–38–4–2 (2004) (emphasis added).

Here, the trial court granted Renzulli's motion to suppress on October 16, 2009. Because the trial court's order suppressed all evidence stemming from the investigatory stop, it effectively precluded further prosecution and was a final judgment appealable under Indiana Code section 35–38–4–2(5). *See State v. Hunter,* 904 N.E.2d 371, 373 (Ind.Ct.App.2009); *State v. Snider,* 892 N.E.2d 657, 658 (Ind.Ct.App.2008). It was from this final judgment that the State should have perfected its appeal.

But instead of filing a notice of appeal within thirty days of the trial court's October 16, 2009 suppression order pursuant to Appellate Rule 9(A)(1), the State filed what it titled a "motion to reconsider" almost three weeks later, on November 5, 2009, and the trial court denied the motion one week later, on November 12, 2009.[4] It is well settled that a motion to reconsider does not "extend the time for any further required or permitted action, motion, or proceedings." Ind. Trial Rule 53.4(A).[5] And, most importantly, because it was filed *after the entry of a final judgment,* the State's motion should have been treated as a motion to correct error. *See Hubbard v. Hubbard,* 690 N.E.2d 1219, 1221 (Ind.Ct.App.1998) (a motion to reconsider is proper only before final judgment, and a motion to reconsider filed after final judgment should be considered as a motion to correct error).[6]

Even as a motion to correct error, and under normal circumstances, the State would then have had thirty days from the date of the trial court's denial of its motion to file a notice of appeal. *See* App. R. 9(A)(1). Here, the State's notice of appeal

*Williams,* 445 N.E.2d 582, 584 (Ind.Ct.App. 1983) (referring to predecessor statute).

**4.** As of November 12, 2009, the State still had time to file its notice of appeal within thirty days of the trial court's October 16, 2009 order granting the motion to suppress. *See* Ind. Appellate Rule 9(A)(1).

**5.** The Indiana Trial Rules apply to criminal proceedings if they do not conflict with any of the Rules of Criminal Procedure. *Ritchie v. State,* 809 N.E.2d 258, 268 (Ind.2004).

**6.** Trial Rule 59 is "expressly incorporate[d]" by Criminal Rule 16(B) "insofar as applicable and when not in conflict with any specific rule adopted by the Indiana Supreme Court for the conduct of criminal procedure." Crim. R. 16(B); *Ritchie,* 809 N.E.2d at 268.

was filed on December 14, 2009, just within that thirty-day time period.[7]

But these are not normal circumstances because the State's right to appeal in criminal cases is strictly limited by statute. *Gradison*, 758 N.E.2d at 1010; *Aynes*, 715 N.E.2d at 948; *Hicks*, 453 N.E.2d at 1016. As noted above, the governing statute provides that the State may appeal "[f]rom an order *granting* a motion to correct errors." I.C. § 35–38–4–2(3) (emphasis added). Here, however, the trial court *denied* the State's motion, and there is simply no statutory authority for the State to appeal from an order *denying* the State's own motion to correct error.

The clear purpose and structure of Indiana Code section 35–38–4–2 is to provide the State and its citizens with an exclusive list of six instances in which the State is permitted to appeal in a criminal case. There are not many "bright lines" in the law, but Indiana Code section 35–38–4–2 is meant to be one. Interpreting this statute to allow what it does not prohibit would run contrary to both its letter and spirit. *See State v. Sierp*, 260 Ind. 57, 60, 292 N.E.2d 245, 246 (1973) ("when the state in its sovereign capacity brought a citizen into its own tribunals, before its own officers, and in obedience to its own processes, and lost, its avenging hand should be stayed except in unusual cases where the power to appeal was expressly conferred.") (quoting 92 A.L.R. 1137 (1934)). Even if it seems unlikely that the General Assembly intended to deprive the State the right to appeal when it chooses to file a motion to correct error, and even if might logically make more sense to read the statute to permit the State to appeal from the denial of its own motion to correct error, the case law is clear that the State's statutory right to appeal in criminal cases is in derogation of the common law and must therefore be strictly construed. *See Pease*, 531 N.E.2d at 1208.

It is tempting to believe that the effect of the statute is a legislative oversight. But the General Assembly could well have reasonably chosen to allow the State to appeal from the grant, but not the denial, of a motion to correct error. For example, if a defendant chooses to file a motion to correct error after a granted motion to suppress, the defendant is the one choosing to delay the normal appellate process by motion practice. However, if the State files a discretionary motion to correct error after the defendant initially prevails, it is the State who acts to delay the normal appellate process, while the defendant's liberty remains at risk or is perhaps even restrained. In this regard, it is also instructive that the General Assembly has exercised its constitutional, policy-making authority by adding grounds for State appeals in criminal proceedings over the history of the statute. *See, e.g., State v. McMillan*, 274 Ind. 167, 173, 409 N.E.2d 612, 616–17 (1980) (noting that 1955 amendment to statute permitting the State to appeal from judgment discharging a defendant was in response to previous court holdings that State could not appeal from such judgments); *State v. Williams*, 445 N.E.2d 582, 583 (Ind.Ct.App.1983) (noting that 1981 amendment to statute allowing the State to appeal from interlocutory orders was adopted to expand the limited instances in which the State could appeal).

For all of these reasons, I would hold that although the State had the right to appeal from the trial court's order granting Renzulli's motion to suppress, the

---

**7.** The trial court denied the State's motion to reconsider on November 12, 2009, and thirty days after this date is December 12, 2009, which fell on a Saturday, giving the State until the following Monday, December 14, to timely file a notice of appeal.

State's right to appeal was forfeited when it failed to file its notice of appeal within thirty days after that order. The State simply had no authority to appeal from its interim, *denied* motion to reconsider, a motion that was by operation of law a motion to correct errors. *See State v. Buckley,* 175 Ind.App. 586, 587, 372 N.E.2d 1241, 1242 (1978) (per curiam) (dismissing appeal by State where controlling statute did not provide State authority to appeal following order granting defendant a new trial).

Although I believe that the State's appeal should be dismissed, the practical effect of such a dismissal would be that the trial court's order granting Renzulli's motion to suppress would remain undisturbed. This is the same result as Judge Riley's conclusion that the trial court's suppression order should be affirmed on the merits. I therefore concur in result.

BRADFORD, J., dissenting.

Because I believe that the trial court erroneously granted Renzulli's motion to suppress all evidence derived from the investigatory stop of Renzulli's vehicle and that the State timely filed the instant appeal, I respectfully dissent.

## I.   The Trial Court Erroneously Granted Renzulli's Motion to Suppress

I believe that the trial court erroneously granted Renzulli's motion to suppress because I would conclude that police officers had ample reasonable suspicion to stop Renzulli's vehicle. On appeal, the State argues that the trial court erred in suppressing the evidence that was recovered during the investigative traffic stop of Renzulli's vehicle because the police officers involved had reasonable suspicion to make the stop. "In the appellate review of a trial court's motion to suppress, the reviewing court determines whether the rec-

ord discloses 'substantial evidence of probative value that supports the trial court's decision.'" *State v. Washington,* 898 N.E.2d 1200, 1203 (Ind.2008) (quoting *State v. Quirk,* 842 N.E.2d 334, 340 (Ind. 2006)). We do not reweigh the evidence. *Id.* The State, appealing from a negative judgment, must show that the trial court's ruling on the suppression motion was contrary to law. *Id.*

It is well-established that even a brief stop of an automobile and detention of its occupants constitutes a seizure under the Fourth Amendment of the United States Constitution and Article I, section 11 of the Indiana Constitution. *State v. Smith,* 638 N.E.2d 1353, 1355 (Ind.Ct.App.1994). However, a brief investigative stop may be justified by reasonable suspicion that the person detained is involved in criminal activity. *Finger v. State,* 799 N.E.2d 528, 532 (Ind.2003) (citing *Terry v. Ohio,* 392 U.S. 1, 31, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). "The reasonable suspicion standard is less demanding than probable cause and requires a showing considerably less than a preponderance of the evidence, but it still requires at least a minimal level of objective justification and more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Teague v. State,* 891 N.E.2d 1121, 1128 (Ind.Ct.App. 2008). In order to justify an investigatory stop, the police officer must be able to point to specific and articulable facts which, when considered together with the rational inferences drawn from those facts, create a reasonable suspicion of criminal conduct on the part of the vehicle's occupants. *Smith,* 638 N.E.2d at 1355. The determination of reasonable suspicion is reviewed de novo. *Teague,* 891 N.E.2d at 1128.

A police officer may make an investigatory stop of an automobile based upon information from a police dispatcher that a

concerned citizen had reported that the automobile was being driven erratically. *Smith,* 638 N.E.2d at 1355. Generally, a concerned citizen includes the victim of a crime or a person who personally witnesses a crime. *Pawloski v. State,* 269 Ind. 350, 354, 380 N.E.2d 1230, 1232 (1978). Concerned citizens are usually one-time informants such that no basis exists from prior dealings to determine their reliability. *Id.* However, concerned citizens who provide law enforcement officials with identifying information are generally considered reliable because "a known or identified informant's reputation can be assessed and ... [he may] be held responsible if [his] allegations turn out to be fabricated...." *Washburn v. State,* 868 N.E.2d 594, 599 (Ind.Ct.App.2007) (quotation omitted), *trans. denied.*

Here, I believe that the record establishes that the officers had reasonable suspicion to conduct an investigatory stop of Renzulli's vehicle. The record establishes that a concerned citizen alerted officers to erratic driving by an individual driving a blue Volkswagen. This concerned citizen provided law enforcement officials with his identity and his phone number. He described the erratic driving as being "all over the road" and running over a curb. Tr. p. 16. The concerned citizen notified law enforcement officials of both his location and the location of the blue Volkswagen. In light of these facts coupled with the rational inferences that officers could draw from these facts, I believe that the police officers had reasonable suspicion

to believe that the driver of the blue Volkswagen, who was later determined to be Renzulli, was operating a vehicle while intoxicated in violation of Indiana law. I would therefore reverse the trial court's order granting Renzulli's motion to suppress.

## II. Timeliness is Not an Issue of Subject Matter Jurisdiction

As an initial matter, I would note that Renzulli did not challenge the timeliness of the State's notice of appeal before this court. Therefore, I believe that any challenge to the timeliness of the State's notice of appeal has been waived. *See Timberlake v. State,* 753 N.E.2d 591, 597 (Ind. 2001) (providing generally that if an issue was known and available, but not raised on direct appeal, it is waived). While I agree with Judge Mathias that the "timely filing of a notice of appeal is a jurisdictional prerequisite, and failure to conform to the applicable time limits results in forfeiture of an appeal," *Bohlander v. Bohlander,* 875 N.E.2d 299, 301 (Ind.Ct.App.2007), *trans. denied,* I do not believe that timeliness is a question of subject matter jurisdiction.

Subject matter jurisdiction is "[j]urisdiction over the nature of the case and the type of relief sought." BLACK'S LAW DICTIONARY 870 (8th ed. 2004). Indiana Appellate Rule 5(A) explicitly defines the "nature of cases and types of relief sought" over which this court has subject matter jurisdiction. Appellate Rule 5(A) provides as follows: "Except as provided in Rule 4 [8], the Court of Appeals shall have jurisdic-

---

8. Indiana Appellate Rule 4(A) provides that the Indiana Supreme Court shall have mandatory and exclusive jurisdiction over the following cases:
    (a) Criminal Appeals in which a sentence of death or life imprisonment without parole is imposed under Ind.Code § 35–50–2–9 and Criminal Appeals in post conviction relief cases in which the sentence was death.

(b) Appeals of Final Judgments declaring a state or federal statute unconstitutional in whole or in part.
(c) Appeals involving waiver of parental consent to abortion under Rule 62.
(d) Appeals involving mandate of funds under Trial Rule 60.5(B) and Rule 61.

tion in all appeals from Final Judgments of Circuit, Superior, Probate, and County Courts, notwithstanding any law, statute or rule providing for appeal directly to the Supreme Court of Indiana."

"There are three types of jurisdiction: (1) jurisdiction of the subject matter; (2) jurisdiction of the person, and (3) jurisdiction over the particular case." *Kondamuri v. Kondamuri*, 799 N.E.2d 1153, 1156 (Ind.Ct.App.2003). The issue of subject matter jurisdiction is resolved by determining whether the claim involved falls within the general scope of authority conferred on the court by the Indiana Constitution or by statute. *Id.* When a court lacks subject matter jurisdiction, its actions are void *ab initio* and may be attacked at any time. *Id.* On the other hand, jurisdiction over the particular case refers to a court's right, authority, and power to hear and decide a specific case within the class of cases over which it has subject matter jurisdiction. *Id.* A judgment rendered by a court that lacks jurisdiction over the particular class is voidable and requires a timely objection or the lack of jurisdiction over the particular case is waived. *Id.* at 1156–57.

I believe that the issue of timeliness refers to this court's right, authority, and power to hear and decide a specific case within the class of cases over which this court has subject matter jurisdiction. *See id.* at 1156. Therefore, I believe that timeliness is a question of jurisdiction over the particular case. *See id.* Moreover, because I believe that timeliness is a question of jurisdiction over the particular case, I believe that a challenge to the timeliness of an appeal is waived if not challenged by either party. See *Kondamuri*, 799 N.E.2d at 1156; *Timberlake*, 753 N.E.2d at 597 (again providing generally that if an issue was known and available, but not raised on direct appeal, it is waived). Therefore, I

believe that the question of timeliness has been waived. Waiver notwithstanding, I believe that the State's notice of appeal was timely filed.

### III. The State Timely Filed the Instant Appeal

In the instant matter, the State appeals the trial court's order granting Renzulli's motion to suppress. It is well-established that the State may appeal from criminal proceedings only when authorized by statute. *State v. Gradison*, 758 N.E.2d 1008, 1010 (Ind.Ct.App.2001) (citing *State v. Aynes*, 715 N.E.2d 945, 948 (Ind.Ct.App. 1999)). Further, because the State's statutory right to appeal in criminal cases is in contravention of common-law principles, this statutory right is strictly construed. *State v. Pease*, 531 N.E.2d 1207, 1208 (Ind. Ct.App.1988).

Indiana Code section 35–38–4–2 (2008) establishes when the State may appeal from criminal proceedings. Indiana Code section 35–38–4–2 provides as follows:

Appeals to the supreme court or to the court of appeals, if the court rules so provide, may be taken by the state in the following cases:

(1) From an order granting a motion to dismiss an indictment or information.

(2) From an order or judgment for the defendant, upon his motion for discharge because of delay of his trial not caused by his act, or upon his plea of former jeopardy, presented and ruled upon prior to trial.

(3) From an order granting a motion to correct errors.

(4) Upon a question reserved by the state, if the defendant is acquitted.

(5) From an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution.

(6) From any interlocutory order if the trial court certifies and the court on appeal or a judge thereof finds on petition that:

(A) the appellant will suffer substantial expense, damage, or injury if the order is erroneous and the determination thereof is withheld until after judgment;

(B) the order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case; or

(C) the remedy by appeal after judgment is otherwise inadequate.

The ultimate effect of an order granting a motion to suppress is to preclude further prosecution when, as here, the suppression order precludes the State from using principal items of evidence which are vital to the prosecution of the defendant. *See State v. Williams*, 445 N.E.2d 582, 584 (Ind.Ct.App.1983) (providing that the suppression order amounted to a dismissal of the action because the order precluded the State from using principle items of evidence which were vital to the State's case). Such an order is appealable as a final judgment under subsection (5) of Indiana Code section 35–38–4–2. *State v. Hunter*, 904 N.E.2d 371, 373 (Ind.Ct.App.2009).

Here, Renzulli filed a motion to suppress certain evidence at trial. The trial court granted Renzulli's motion on October 16, 2009. The trial court's order granting Renzulli's motion to suppress amounted to a final judgment because it precluded the State from using principal items of evidence which were vital to its prosecution of Renzulli. *See Williams*, 445 N.E.2d at 584. The State filed a motion to reconsider on November 5, 2009, which Judge Mathias correctly treats as a motion to correct error because it was effectively filed after the entry of a final judgment. *See Hubbard v. Hubbard*, 690 N.E.2d 1219, 1221 (Ind.Ct.App.1998) (providing that because motions to reconsider and to correct error are effectively the same motion, a motion to reconsider filed after the entry of final judgment should be treated as a motion to correct error). The trial court denied the State's motion to correct error on November 12, 2009. The State subsequently initiated an appeal on December 14, 2009.[9]

Trial Rule 59 provides that generally, a motion to correct error is not a prerequisite for appeal. However, there are limited circumstances, none of which apply to the instant matter, when a party is required to file a motion to correct error before initiating an appeal.[10] *See* Tr. R. 59(A). If a party chooses or is required to file a motion to correct error, it "shall be filed no later than thirty (30) days after the entry of a final judgment or an appeal-

---

9. The trial court denied the State's motion to reconsider on November 12, 2009, and thirty days after this date is December 12, 2009. December 12, 2009, however, fell on a Saturday, giving the State until the following Monday, December 14, 2009, to timely file a notice of appeal.

10. It seems illogical that the General Assembly could have intended to require the State to forfeit its right to appeal if it first filed a motion to correct error because the State could, at least in theory, be required to file a motion to correct error as a prerequisite to initiating an appeal in some instances. *See*

Tr. R. 59(A). Further, it seems exceedingly unlikely, if not impossible, that in these situations the State would be able to file a motion to correct error, receive a ruling, and initiate an appeal within the thirty day time period set forth in Appellate Rule 9(A). Therefore, a seemingly unintended result of Judge Mathias's opinion is that the State, in some situations, could find itself in a "Catch 22" situation where it could be precluded from following the procedural requirement that it file a motion to correct error prior to its notice of appeal if it wished to appeal the ruling of the trial court.

able final order." Tr. R. 59(C). A motion to correct error is deemed denied if the trial court fails to set the motion for a hearing within forty-five days after the motion was filed or fails to rule on the motion within thirty days after it was heard. Tr. R. 53.3(A).

Indiana Appellate Rule 9(A) provides that a "party initiates an appeal by filing a Notice of Appeal with the trial court clerk within thirty (30) days after the entry of a Final Judgment." However, Indiana Appellate Rule 9(A) further provides that if a "party files a timely motion to correct error, a Notice of Appeal must be filed within thirty (30) days after the court's ruling on such motion, or thirty (30) days after the motion is deemed denied under Trial Rule 53.3, whichever comes first." Thus, Appellate Rule 9(A) allows the party to file a timely appeal following a ruling on a motion to correct error, and ensures that a party who chooses to first file a motion to correct error does not relinquish his right to appeal the judgment.

Judge Mathias recognizes that under normal circumstances, the State's appeal was timely filed. However, I believe that the instant matter falls squarely under these "normal circumstances" because the State seemingly acted in accordance with the trial and appellate rules by first timely filing a motion to correct error pursuant to Trial Rule 59 and then initiating a timely appeal pursuant to Appellate Rule 9(A).

The State's appeal was filed in accordance with Indiana Code 35–38–4–2(5), which, as previously mentioned, provides that the State may appeal from an "order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution." Nothing in section 5 or any other relevant portion of the statute precludes the State from exercising its option to file a motion to correct error in accordance with Trial Rule 59 as

recognized by Appellate Rule 9(A). To the extent that Judge Mathias's opinion suggests that Indiana Code 35–38–4–2(3) acts to bar the State from appealing the instant matter pursuant to Indiana Code 35–38–4–2(5) merely because the motion to correct error that was filed by the State in response to a trial court's suppression ruling was denied, I believe that Indiana Code section 35–38–4–2(3) does not apply to the instant matter because, as Judge Mathias correctly asserts, Indiana Code section 35–38–4–2(3) presupposes that the motion to correct error would have been filed by the defendant, as it is unlikely that the State would appeal an order granting its own motion. Therefore, I do not believe that Indiana Code section 35–38–4–2(3) has any effect on the State's right to appeal an order granting a motion to suppress evidence pursuant to Indiana Code section 35–38–4–2(5).

Moreover, I believe that the General Assembly intends for statutes to be read in harmony with the trial and appellate rules absent an explicit statement to the contrary. The Indiana Supreme Court has held that where a statute is in conflict with the procedural trial and appellate rules which govern the conduct of litigation, the rules take precedent over the conflicting statutes. *State ex rel. Gaston v. Gibson Circuit Court*, 462 N.E.2d 1049, 1051 (Ind. 1984). Therefore, to the extent that Judge Mathias's opinion provides that Indiana Code section 35–38–4–2 precludes the State from exercising its option to file a motion to correct error in accordance with Trial Rule 59 and Appellate Rule 9(A), I believe that the trial and appellate rules should take precedent over Indiana Code section 35–38–4–2. Accordingly, where, as here, the State timely filed a motion to correct error and subsequently initiated its appeal in accordance with Trial Rule 59

and Appellate Rule 9(A), I believe its appeal should be considered timely.