**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**PAUL MATTHEW BLANTON**
**JEFFREY K. BRANSTETTER**
Blanton & Branstetter, LLC
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

FILED

Nov 01 2012, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

ANGELA R. ELLIOTT,               )
                                 )
    Appellant-Defendant,         )
                                 )
       vs.                    )   No.  13A04-1201-CR-11
                                 )
STATE OF INDIANA,                )
                                 )
    Appellee-Plaintiff.          )

APPEAL FROM THE CRAWFORD CIRCUIT COURT
The Honorable K. Lynn Lopp, Judge
Cause No. 13C01-1007-FA-4

November 1, 2012

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Angela R. Elliott appeals her convictions for Dealing in Methamphetamine,[1] a class A felony, Maintaining a Common Nuisance,[2] a class D felony, Possession of Paraphernalia,[3] a class A misdemeanor, and Resisting Law Enforcement,[4] a class A misdemeanor.  Elliott argues that her convictions must be reversed because her right to be free from unreasonable search and seizure was violated when the trial court admitted drugs into evidence that the police had seized during an improper search of a vehicle.  Elliott also argues that the trial court erred in denying her motion for a mistrial, that the trial court abused its discretion in admitting evidence of prior bad acts at trial in violation of Indiana Evidence Rule 404(B), and that the jury was improperly instructed.  Concluding that the drugs seized during the search were properly admitted into evidence and finding no other error, we affirm the judgment of the trial court.

## FACTS

On July 21, 2010, Indiana State Trooper Katrina Smith received a telephone call from M.M., a confidential informant, who indicated that she could purchase methamphetamine from Elliott.  Trooper Smith was aware that Floyd County Sheriff's Deputy Troy McDaniel had used M.M. as an informant on numerous occasions.  Deputy

---

[1] Ind. Code § 35-48-4-1.1.

[2] I.C. § 35-48-4-13(b).

[3] I.C. § 35-48-4-8.3(b).

[4] Ind. Code § 35-44-3-3.

2

McDaniel had found M.M. to be credible and reliable in the past, because the information that she had provided has led to drug arrests and convictions. Trooper Charles Pirtle, who also became involved in the investigation, also knew that other "officers had used [M.M.] for credible information." Tr. p. 39.

Trooper Smith contacted her supervisor, Sergeant Paul Andry, and requested his assistance in the investigation. M.M. had also supplied Sergeant Andry with information on prior occasions and had "never known it to be wrong." Id. at 60. In fact, he determined that M.M. was "usually blatantly honest." Id. Sergeant Andry knew Elliott, as he had arrested her on other occasions. In one incident, Sergeant Andry made an undercover purchase of marijuana from Elliott. On another occasion, Sergeant Andry arrested Elliott in connection with a methamphetamine lab in Orange County.

Sergeant Andry was also involved in investigating another meth lab in Orange County where an individual named James Bayless had been charged. One of the individuals arrested with Bayless's sister had stated that Bayless was living with Elliott in a mobile home in a nearby town. Sergeant Andry had also received information that Elliott and Bayless were potentially involved in drug manufacturing at that location. Another source had informed Sergeant Andry that Elliott and Bayless had been seen riding together in a red PT Cruiser automobile.

Later that day, M.M. contacted Elliott and arranged to purchase a quantity of methamphetamine for $100. Trooper Smith relayed that information to Sergeant Andry. Trooper Smith and Sergeant Andry proceeded to M.M.'s residence at approximately 2:30

3

that afternoon and waited for Elliott to arrive. It was agreed that several other officers, including Trooper Pirtle, would be at various locations where they could watch Elliott's vehicle approach. While waiting for Elliott to arrive, Sergeant Andry overheard some of the phone calls between M.M. and Elliott. Sergeant Andry recognized Elliott's voice from his past experiences with her and heard M.M. talking about the amount of drugs that she was going to buy. Sergeant Andry heard Elliott say where she was going before she would arrive at M.M.'s house.

Elliott was driving a PT Cruiser, and Bayless was in the passenger seat. Sergeant Andry saw Elliott from the location where he was stationed. At some point, Elliott sounded the vehicle's horn and looked toward the residence. Trooper Smith and Sergeant Andry came out and yelled, "State Police, show me your hands." Tr. p. 10. Sergeant Andry approached the vehicle with his gun drawn and told Elliott and Bayless to raise their hands.

Sergeant Andry walked toward the driver's side door as Trooper Smith went to the passenger side. Sergeant Andry saw Elliott holding plastic baggies in her right hand. At some point, Elliott appeared to drop the baggies. At that moment, Trooper Smith heard Sergeant Andry say that Elliott had something in her hand, and when Trooper Smith looked inside the vehicle, she saw two bags containing an "off white" substance next to Elliott. Id. at 119. Sergeant Andry placed Elliott under arrest, and he holstered his gun so he could control Elliott's hands. Although the troopers ordered Elliott from the vehicle, she refused to comply.

4

When Sergeant Andry tried to remove Elliott from the vehicle, she resisted. Other officers came to his aid and tried to remove Elliott from the vehicle. During this incident, Sergeant Andry saw a glass pipe that was in the vehicle's console. Elliott kept one of her hands closed and made a motion suggesting that she was going to swallow the baggies she was holding. The troopers pried open Elliott's hand, and the baggies fell out. After Elliott was handcuffed, the troopers advised her and Bayless of their Miranda rights. Elliott stated that she was bringing methamphetamine to M.M. so that they could smoke it. In response, Sergeant Andry remarked that he did not believe that Elliott was there to smoke the meth. Rather, he told Elliott he thought that she was going to deal it. Elliott then stated, "why would I sell [M.M.] a gram for a hundred when I'm getting a hundred and twenty-five for a half." Tr. p. 319.

Trooper Pirtle searched Bayless and found two plastic bags containing a clear powdery substance on his person that Trooper Pirtle believed was methamphetamine. Trooper Robert Lambert had brought his canine to the scene, and the dog alerted to the presence of drugs at the front passenger door.

A search of the vehicle revealed $867 and a glass pipe containing some type of drug residue. In the vehicle's center console, the troopers found a blue zipper bag containing an instrument for ingesting methamphetamine, a Tylenol bottle that held a plastic bag containing a crystal-like substance, and a set of digital scales. Another bag appeared to have been shoved between the center console and the passenger seat. This bag had a lock, and keys found in the center console opened it. Inside that bag were

5

additional bags. One of these bags contained eighteen baggies that held a crystal-like substance. Another bag held thirty-nine bags containing a crystal-like substance. Two additional plastic bags held eleven more bags that contained a similar-looking substance. The troopers also found cell phones and a camera inside the vehicle. Laboratory testing of the baggies that Elliott had held in her hand and the bags that were found in the vehicle showed that, combined, they contained over 130 grams of methamphetamine.

On July 26, 2010, Elliott was charged with the following offenses:

Count I  Dealing in Methamphetamine, a class A felony
Count II—Possession of Methamphetamine, a class C felony
Count III—Maintaining a Common Nuisance a class D felony
Count IV—Possession of Paraphernalia, a class A misdemeanor
Count V—Resisting Law Enforcement, a class A misdemeanor

Appellant's App. p. 79-83.

On August 5, 2011, Elliott filed a motion to suppress, claiming that her statements and evidence seized at the scene were "obtained in violation of Article 1, Section 11 of the Indiana Constitution and in violation of the Fourth and Fourteenth Amendments of the United States Constitution." Appellant's App. p. 279. Elliott argued that the police officers lacked probable cause to arrest her, and that under the totality of the circumstances, "the warrantless search was clearly unreasonable insofar as the vehicle in question was parked in a private drive, was not a danger to the public in general, was not interfering with business operations, was flanked by a number of police officers, and was not readily mobile." Id. at 294-95.

Following a hearing, the trial court denied Elliott's motion to suppress concluding, among other things, that the police officers had received "credible information from an informant that had provided information in the past . . . that had been proven to be reliable." Id. at 13-14. It was also determined that the search of the vehicle was lawful as a search incident to arrest.

A jury trial commenced on November 28, 2011. When the trial court permitted Sergeant Andry to testify that he believed that Elliott was at the scene to deal in methamphetamine, Elliott objected and moved for a mistrial. The trial court denied Elliott's motion. The trial court also permitted testimony about the cash that was seized from the vehicle during the search, and Sergeant Andry was allowed to testify over Elliott's objection that Elliott had asked why, when she was getting $125 per half-gram of dope, would she sell it for only $100 per gram.

Following the presentation of the evidence, the trial court refused to give Elliott's tendered instruction on the charged offenses, which provided that "if the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty." Tr. p. 359; Appellant's App. p. 64 (emphasis added). Instead, the trial court's final instructions read that the defendant "should" be found not guilty if the State failed to prove the elements beyond a reasonable doubt. Appellant's App. p. 84-87. Following the presentation of the evidence, Elliott was found guilty as charged on December 5, 2011.

At the sentencing hearing on January 3, 2012, the trial court sentenced Elliott as follows: forty years on Count I with Count II merged with Count I, thirty months on Count III to be served concurrently with Count I, one year on Count IV to run concurrently with Count I, and one year on Count V to be served consecutively to Count I, with no time suspended. Thus, Elliott was ordered to serve an aggregate sentence of forty-one years of incarceration. Elliott now appeals.

## DISCUSSION AND DECISION

### I. Admission of Evidence—Search and Seizure

Elliott first argues that the trial court erred in admitting the drugs into evidence that had been seized from the vehicle. Specifically, Elliott contends that the police lacked reasonable suspicion to detain and subsequently arrest her based on an unsubstantiated tip from M.M. Hence, Elliott maintains that the initial stop, her arrest, and the subsequent search of the vehicle were improper and that the drugs were therefore erroneously admitted into evidence.

In resolving this issue, we initially observe that a trial court has broad discretion in ruling on the admissibility of evidence, and we will disturb that ruling only when it is shown that the trial court abused its discretion. Sublett v. State, 815 N.E.2d 1031, 1034 (Ind. Ct. App. 2004). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. Packer v. State, 800 N.E.2d 574, 578 (Ind. Ct. App. 2003).

When reviewing a defendant's claim that evidence should not have been admitted because his or her right to be free from unreasonable search and seizure has been violated, we examine the evidence most favorable to the trial court's ruling along with any uncontested evidence. Matson v. State, 844 N.E.2d 566, 570 (Ind. Ct. App. 2006). We do not reweigh the evidence or judge the credibility of witnesses. We will sustain the trial court's ruling if it can be affirmed on any basis found in the record. Crawford v. State, 770 N.E.2d 775, 780 (Ind. 2002).

As a general rule, reasonable searches and seizures require a judicially-issued search warrant as a condition precedent to a lawful search. Wilson v. State, 966 N.E.2d 1259, 1263 (Ind. Ct. App. 2012), trans. denied. Warrantless searches are per se unreasonable, and the State therefore bears the burden of establishing that a warrantless search falls within one of the recognized exceptions to the warrant requirement. Id.

Stopping an automobile and detaining its occupants constitute a "seizure" within the meaning of the Fourth Amendment, even though the purpose of the stop is limited and the resulting detention quite brief. Harper v. State, 922 N.E.2d 75, 79 (Ind. Ct. App. 2010), trans. denied. To justify such a stop prior to an arrest, the officers must first have a reasonable suspicion that criminal activity was occurring or about to occur. Johnson v. State, 659 N.E.2d 116, 120 (Ind. 1995). When determining whether a vehicle stop satisfied the reasonable suspicion standard, we examine the totality of the circumstances to see whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing. Moultry v. State, 808 N.E.2d 168, 171 (Ind. Ct. App.

9

2004). An investigative stop may be based upon the collective information known to a law enforcement organization as a whole. Id. at 172.

Turning to the circumstances here, we note that Elliott initially challenges the validity of the initial stop, claiming that the information M.M. provided lacked an indicia of reliability. However, as discussed above, Trooper Smith testified that Floyd County Sheriff's Deputy Troy McDaniel had used M.M. as an informant on multiple occasions and found M.M. credible and reliable because the information she had provided led to drug arrests and convictions. Id. at 6-7. Also, Trooper Pirtle knew that other "officers had used [M.M.] for credible information." Id. at 39. Trooper Pirtle did not know of any situation in the past where M.M. had provided false information to police. Id. Sergeant Andry testified that M.M. had given him information on multiple occasions before and he had "never known it to be wrong." Id. at 60.

Also, Sergeant Andry knew Elliott and had arrested her on a couple of occasions for drug-related offenses. And on the day of the incident in this case, Sergeant Andry overheard Elliott speaking on the telephone to Montgomery and witnessed Elliott and Bayless arrive at M.M.'s house in a red PT Cruiser. Tr. p. 46, 49. In our view, the totality of the information above provided a sufficient basis for the troopers to believe that M.M. was reliable. See Parker v. State, 662 N.E.2d 994, 995 (Ind. Ct. App. 1996) (observing that reasonable suspicion was present when the informant was known to the officer and had provided reliable information in the past). The information also provided

10

a reasonable suspicion that Elliott was engaged in criminal activity, such that the initial stop of the vehicle was proper.

We also reject Elliott's argument that the officers required probable cause to pursue their investigation because Elliott was actually under arrest when they approached the vehicle with their guns drawn. The record reflects that the troopers were merely attempting to maintain the status quo, and there was considerable risk that Elliott might attempt to flee in the vehicle or run into them with the vehicle to avoid an investigatory detention. In our view, the officers' drawing of their weapons was a necessary precaution to insure that Elliott would not attempt to use her vehicle to thwart the investigation.

That said, in addition to the information above that justified the initial seizure of Elliott, there was additional evidence that provided probable cause to arrest her. In particular, when Sergeant Andry approached the vehicle, he observed plastic baggies containing a white substance in Elliott's right hand. Tr. p. 49. As a result, there was probable cause for Andry's arrest. See Strangeway v. State, 720 N.E.2d 724, 727 (Ind. Ct. App. 1999) (holding that a police officer had probable cause to arrest the driver of the vehicle after the passenger exited the car and the police officer saw a cellophane wrapper containing white pills that he believed were controlled substances on the seat of the automobile).

As for the search of the vehicle, the record shows that one of the troopers saw Elliott drop plastic baggies containing an "off-white to white substance." Tr. p. 119. Second, Elliott had additional baggies in her possession when she was removed from the

vehicle.  Id. at 122-23, 248.  Finally, a canine alerted to the presence of drugs in the vehicle.  As a result, there was probable cause to search the vehicle for illegal drugs.  See Myers v. State, 839 N.E.2d 1146, 1150 (Ind. 2005) (holding that a canine sniff provided probable cause that the vehicle contained illicit drugs, such that a search of the vehicle for drugs was constitutionally permitted).

As an aside, we note that after Elliott's lawful arrest, the search of the vehicle for could also be justified as a search incident to the arrest.  See Arizona v. Gant, 556 U.S. 332 (2009) (holding that the police may search a vehicle incident to a recent occupant's arrest if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest).  Given the circumstances, it was certainly reasonable for the officers to believe that the vehicle would contain illegal drugs.  For all these reasons, we find that Elliott's rights under the Fourth Amendment were not violated when the officers searched the vehicle.

To the extent that Elliott challenges the validity of the stop and search of the vehicle under Article 1, Section 11 of the Indiana Constitution, we note that rather than focusing on the defendant's reasonable expectation of privacy as is done in the Fourth Amendment context, we focus on the actions of the police officer, concluding that the search is legitimate where it is reasonable given the totality of the circumstances.  Trimble v. State, 842 N.E.2d 798, 803 (Ind. 2006).  The following factors are considered: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the

degree of intrusion the method of the search imposes on the individual's ordinary activities; and (3) the extent of law enforcement needs. Litchfield v. State, 824 N.E.2d 356, 359 (Ind. 2005).

As for the first factor, at the time of the search of the vehicle, there was an abundance of evidence that Elliott possessed methamphetamine and that the vehicle would contain illegal drugs. Second, the canine sweep intruded minimally on Elliott's freedom of movement because it occurred when the vehicle was lawfully seized and after Elliott was lawfully arrested. Once the canine alerted, the scope of the search became more invasive, but the troopers had an even higher degree of confidence that the vehicle contained evidence of a criminal offense. Finally, the troopers' need to eradicate drug trafficking was substantial. That said, we conclude that the search was reasonable under the totality of the circumstances, and there was no violation of Article 1, Section 11 under the Indiana Constitution. As a result, we conclude that the drugs were properly admitted at trial.

## II. Admission of Opinion Testimony—Mistrial

Elliott maintains that the trial court erred in denying her motion for a mistrial because Sergeant Andry was improperly permitted to testify that Elliott was at M.M.'s home to deal in methamphetamine. Elliott claims that her convictions must be reversed because this testimony violated the provisions of Indiana Evidence Rule 704(b) and amounted to an improper opinion regarding her intent.

13

A mistrial is an extreme remedy granted only when no other method can rectify the situation. Brooks v. State, 934 N.E.2d 1234, 1243 (Ind. Ct. App. 2010), trans. denied. We review the trial court's decision denying a motion for a mistrial for an abuse of discretion. Id. Because the trial court is in the best position to gauge the surrounding circumstances of an event and its impact on the jury, we accord great deference to the trial court's ruling on a mistrial motion. Id.

In determining whether a mistrial was warranted, we consider whether the defendant "was placed in a position of grave peril to which [he or she] should not have been subjected." Id. The gravity of the peril is determined by "the probable persuasive effect on the jury's decision." Id. Because the trial court denied Elliott's motion for a mistrial, she has the burden to demonstrate both that she was placed in a position of grave peril to which she should not have been subjected and that no other remedy could cure the perilous situation in which she was placed.

In this case, Elliott maintains that Sergeant Andry's testimony violated Indiana Evidence Rule 704(b) with respect to his testimony regarding his response to Elliott's statements that she was bringing the methamphetamine so that she and M.M. could smoke it. More particularly, Sergeant Andry testified that he believed that Elliott was at the scene to deal in the drug. Tr. p. 314.

Evidence Rule 704(b) provides that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." When examining this

14

rule, we note that Elliott identifies only this one instance where Sergeant Andry allegedly violated the rule. As our Supreme Court has observed, it is difficult to see how a jury could have been persuaded by such an isolated reference. See Washington v. State, 808 N.E.2d 617, 625 n.4 (Ind. 2004) (finding that officers' statements on at least nine occasions that the defendant was lying would not have had a persuasive effect on the jury). As a result, we cannot say that Elliott was placed in a position of grave peril.

Even more compelling, we note that Sergeant Andry was not testifying regarding his opinion of Elliott's intent, but rather was testifying to a statement that he made to elicit a response from Elliott. Tr. p. 317-18. We find Bostick v. State, 773 N.E.2d 266 (Ind. 2002), analogous to the circumstances here. In Bostick, the defendant claimed that the trial court improperly admitted statements into evidence that the officers made during an interrogation session. Specifically, the officers had expressed their beliefs about the defendant's guilt. Id. at 271. Our Supreme Court concluded that "by challenging the defendant with assertions of her guilt, it is clear that the interrogators' utterances were not assertions of fact, but more in the nature of statements designed to elicit a response." Id. In addition to the rationale discussed in Bostick—which we believe applies to the circumstances here—the trial court in this case instructed the jury that

> [s]tatements made by officers at the scene to the Defendant are to only . . . be considered as a method of questioning intended to elicit information from the Defendant and not as evidence of her intent.

Appellant's App. p. 92. Based on this instruction, there is no reason to believe that the jury would have considered Sergeant Andry's statement as evidence of Elliott's intent.

15

Therefore, Elliott has not established that the trial court erred in denying her motion for mistrial.

### III. Prior Bad Acts

Elliott argues that the trial court should have excluded the testimony at trial regarding the cash that was seized from the vehicle and Sergeant Andry's testimony recapping Elliott's statement asking why she would sell the drugs to M.M. at $100 per gram when she was able to get $125 per half gram for it. Elliott maintains that the admission of this evidence violated Indiana Evidence Rules 403 and 404(b).

Indiana Evidence Rule 403 provides that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." And Indiana Evidence Rule 404(b) provides:

> Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The evidence that Rule 404(b) was primarily designed to exclude is that of "a crime committed on another day in another place, evidence whose only apparent purpose is to prove the defendant is a person who commits crimes." Sanders v. State, 724 N.E.2d

16

1127, 1131 (Ind. Ct. App. 2000). In other words, Rule 404(b) is "designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities." Hicks v. State, 690 N.E.2d 215, 218 (Ind.1997); see also Southward v. State, 957 N.E.2d 975, 977 (Ind. Ct. App. 2011) (observing that the use of evidence prohibited under Rule 404(b) carries with it the risk of the "forbidden inference" that a person's bad act on a prior occasion shows that the act now at issue conforms with such person's propensity to commit said bad acts).

In our view, the evidence about which Elliott complains is not of this type. Because Elliott was charged with dealing in methamphetamine, her statement regarding the prices for methamphetamine provided probative evidence regarding that charged offense. Also, the fact that Elliott was carrying a large amount of cash was relevant as to whether she was dealing in methamphetamine. A methamphetamine dealer would be expected to have access to cash to purchase the drugs from her supplier for dealing as well as proceeds from selling methamphetamine. A dealer may also need cash on hand to provide change to any purchasers. As a result, we cannot say that the evidence at issue was evidence of an unrelated bad act occurring at another time offered "only to create the inference that [Elliott] is a [person] of bad character." Sanders, 724 N.E.2d at 1131. Rather, that evidence went to the essence of the charged offense.

Also, when considering the probative nature of Elliott's statement and the price involved for the drugs, it cannot be said that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under Evidence Rule 403. As

17

a result, we conclude that the trial court did not err in admitting Elliott's statement and the testimony about the cash into evidence.

IV.   Instructions

Elliott next claims that the trial court erred in refusing to give his tendered instruction regarding the State's burden of proof.  Specifically, Elliott claims that the trial court should have instructed the jury that it <u>must</u> find the defendant not guilty if the State failed to prove the elements of the offenses beyond a reasonable doubt, rather than using the phrase that the jury <u>should</u> find him not guilty, as the trial court actually instructed.

Instructing the jury is a matter that is generally left to the trial court's sound discretion, and we will reverse only for an abuse of discretion.  <u>Murray v. Satate</u>, 798 N.E.2d 895, 900 (Ind. Ct. App. 2003).  Before a defendant is entitled to a reversal, he or she must establish that an instructional error prejudiced his or her substantial rights.  <u>Hancock v. State</u>, 737 N.E.2d 791, 794 (Ind. Ct. App. 2004).  A trial court's decision not to give a tendered instruction does not amount to an abuse of discretion if the given instructions, considered as a whole and in reference to each other, did not mislead the jury as to the applicable law.  <u>Chambers v. State</u>, 734 N.E.2d 578, 580 (Ind. 2000).

As discussed above, Elliott contends that the trial court's instructions to the jury regarding the elements of the various counts were erroneous because the instructions should have stated that the jury <u>must</u> find the defendant not guilty if the State did not prove the elements of the offenses beyond a reasonable doubt.  Appellant's Br. p. 40-43.  Notwithstanding Elliott's contention, our Supreme Court has determined that the use of

18

"should" adequately instructs the jury as to the proper course of conduct if there is a failure of proof by the prosecution. Ben-Yisrayl v. State, 738 N.E.2d 253, 265 (Ind. 2000). Moreover, one of the trial court's preliminary instructions informed the jury that Elliott was presumed innocent, that to overcome the presumption of innocence the State must prove that Elliott was guilty of each element of the crime charged beyond a reasonable doubt, and that Elliott was "not required to present any evidence to prove her innocence or to prove or explain anything." Appellant's App. p. 120. And another preliminary instruction provided that the State must prove each of the elements of the offenses beyond a reasonable doubt and informed the jury that if "there is a reasonable doubt that the Defendant is guilty of the crime(s), you must give the Defendant the benefit of that doubt and find the Defendant not guilty of the crime under consideration." Id. at 121 (emphasis added). For these reasons, and contrary to Elliott's argument, the trial court's instructions did not relieve the State of its burden to show that Elliott committed the charged offenses beyond a reasonable doubt. Thus, Elliott's claim fails.

CONCLUSION

In light of our discussion above, we conclude that the trial court properly admitted Elliott's statements and the drugs that the police officers seized from Elliott's person and the vehicle. We also find that it was not error to admit Sergeant Andry's statement to Elliott regarding her sale of drugs, and we conclude that the evidence that was admitted at trial with respect to the cash that was seized from the vehicle, and Sergeant Andry's comment about the amount of money that Elliott received, did not violate the provisions

19

of Indiana Evidence Rules 403 or 404(b).  Finally, we conclude that the trial court did not err in refusing to give Elliott's tendered final instruction regarding the State's burden of proof.

The judgment of the trial court is affirmed.

ROBB, C.J., and BRADFORD, J., concur.